[No. 31815. Department Two. February 29, 1952.]

THE STATE OF WASHINGTON, *Appellant,* v. WALTER T. COY, *Respondent.*[1]

*Charles O. Carroll, David C. Dobson,* and *Edward M. Bensussen,* for appellant.

*Monheimer, Schermer & Mifflin* and *Melville Monheimer, Jr.,* for respondent.

OLSON, J.—Respondent was convicted in justice court of the offense of interfering with a public officer. His appeal

[1]Reported in 241 P. (2d) 205.

to the superior court resulted in a dismissal of the case, after the court sustained his challenge to the sufficiency of the evidence at the conclusion of the state's case. The state has appealed from the judgment of dismissal.

The following facts appear in the challenged evidence. During the evening of April 29, 1950, two officers of the Washington state patrol were investigating two cars which were parked improperly across the street from respondent's theater. They discussed the situation with respondent, whose only interest in the matter appears to be that the offenses involved patrons of his theater. The officers left to attend to other duties, and, about two hours later, one of them returned to issue citations for the illegal parking. Respondent again appeared and, in reply to his inquiry, the officer told him what he intended to do. Respondent protested against this action, and stated that he was entitled to consideration because he was a large taxpayer, had assisted the chief of the patrol in many ways, and was influential in politics. The officer refused to discuss the matter with him, and respondent left. The owner of one of the illegally parked cars appeared, and the officer was proceeding to issue a citation to him when respondent returned. He advised the car owner to bring the citation to him and he would take care of it. He interrupted the officer's conversation with the car owner, and cursed the officer. What next occurred is shown by the following quotation from the officer's testimony:

"A. As soon as he said that I got out of the car and told him to go back into the theatre, that he was interfering; either go back into the theatre or at least leave until I had completed my citation. He told me he didn't have to go back in the theatre and to keep my mouth shut. At that time I told him to either go back in the theatre or at least leave or I would place him under arrest. He said he wouldn't, so I told him he was under arrest. I had the arrest book in my other hand. He knocked that out of my hand and turned and ran to the theatre. Q. How did he happen to knock it out of your hand? A. Well, he just swung his arm out and knocked it out. He hit my arm and knocked the ticket book to the ground."

The officer overtook respondent at the door to the theater, where respondent struggled and prevented his removal from the theater. The disturbance attracted a number of people to the theater lobby. Finally, when the respondent refused to accompany him peacefully, the officer told him he would obtain a warrant and have him arrested later.

A warrant for respondent's arrest was obtained from a justice of the peace upon a charge, designated "INTERFERING WITH A PUBLIC OFFICER (RCS [sic] 2331)," as follows:

"Then and there being the said Walter Coy, did interfere with a public officer at 13400 First Avenue South, Seattle, Washington, in the performance of his duty."

Respondent made no motion against the charge, and no question regarding its form is before us.

RCW 9.18.090 [cf. Rem. Rev. Stat., § 2331] reads as follows:

"Every person who, by means of any threat, force, or violence, attempts to deter or prevent any executive or administrative officer from performing any duty imposed upon him by law, or who knowingly resists by force or violence any executive or administrative officer in the performance of his duty, shall be guilty of a gross misdemeanor."

By his challenge to the sufficiency of the state's evidence, respondent admits its truth, and all inferences that reasonably can be drawn from it. He also requires us to interpret the evidence most strongly against him and in the light most favorable to the state. *State v. McDaniels*, 30 Wn. (2d) 76, 190 P. (2d) 705 (1948).

From the record, it appears that the state presented its case in the trial court under the first portion of the quoted statute, and it is that portion which we will and must consider, regardless of appellant's contention, in its brief, that it proceeded under the second portion. See *Capper v. Callahan*, 39 Wn. (2d) 882, 887, 239 P. (2d) 541 (1952), and cases cited. The essential elements of the crime defined in the first part of the statute are that the accused shall, (1) by means of any threat, force or violence, (2) attempt to deter or prevent (3) any executive or administrative

officer (4) from performing a duty imposed upon him by law.

The evidence shows that an executive officer, the state patrolman, was performing a duty imposed upon him by law—the issuance of a traffic citation. A jury might reasonably infer that the entire course of conduct adopted by respondent, including the force used in knocking the citation book out of the officer's hand, and in struggling with the officer inside the theater, which created a disturbance, was an attempt to deter or prevent him from issuing the citation.

The question before us cannot be how the jury would or should decide the issue of respondent's guilt or innocence, upon consideration of the whole case, but is whether or not the state's evidence is sufficient to sustain a conviction, if the jury should find the respondent guilty. We answer that question in the affirmative.

The judgment is reversed.

SCHWELLENBACH, C. J., HILL, HAMLEY, and FINLEY, JJ., concur.