**Ravinell JOHNSON, Petitioner,**
**v.**
**Ira M. COINER, Warden, West Virginia**
**Penitentiary, Respondent.**

**Civ. A. No. 2563.**

United States District Court,
S. D. West Virginia,
Huntington Division.

Feb. 12, 1970.

Dan C. Robinson, Huntington, W. Va., for petitioner.

George E. Lantz and Willard A. Sullivan, Asst. Attys. Gen. of West Virginia, Charleston, W. Va., for respondent.

CHRISTIE, District Judge:

This proceeding comes before the Court on a petition for habeas corpus filed in forma pauperis by Ravinell Johnson, a prisoner of the State of West Virginia, pursuant to the provisions of 28 U.S.C.A. § 2241. Petitioner having exhausted his state court remedies, seeks relief in this court upon the following allegations:

(1) That the trial court erred in allowing him to plead guilty before determining whether or not he was competent to make such a plea;

(2) that he was coerced into a plea of guilty by his defense attorneys and the prosecuting attorney; and

(3) that he was denied the effective assistance of counsel.

An evidentiary hearing was held before this Court on August 26–27, 1969 and September 5, 1969, and the Court has been furnished with copies of the state court proceedings. After hearing the evidence and reviewing the record, it is the opinion of the Court that there is no merit to petitioner's contentions.

The facts surrounding the petitioner's claims are these: On March 4, 1966, petitioner murdered Clyde Ramey and Christine Matthews in Huntington, West Virginia. Petitioner was arrested that day and placed in the Cabell County jail.

Thereafter, his sister and family friends arranged for an attorney to be employed for his representation. This attorney brought an associate into the case, and together they visited the petitioner in the jail several times and began preparations for his defense. On March 14, 1966, petitioner had a preliminary hearing before a justice of the peace. At this hearing, petitioner was represented by his attorneys and he was bound over to the grand jury. On March 18, 1966, the grand jury of Cabell County returned two indictments for murder against the petitioner. On several subsequent dates following the return of the indictments, the petitioner consulted with his attorneys concerning his defense. It appearing that petitioner had a history of alcoholism and epilepsy, the attorneys obtained all the medical records available in order to assess the possibility of an insanity defense. However, both attorneys were of the opinion, after observing petitioner during these consultations, that no mental abnormality existed to the extent that he did not have the capacity to form a criminal intent at the time of the commission of the alleged offenses. The attorneys were also satisfied that he fully understood the nature of the charges that were pending against him and that he was capable of assisting in his defense.

On April 25, 1966, the trial date, petitioner's attorneys moved the Court for a continuance in order that petitioner might be given a mental examination. The motion was denied. Following this denial, a motion was made for a continuance so that further preparation for petitioner's defense could be made. The trial judge, remarking that some 32 days had passed since the return of the indictments, denied this motion. After the denial of this motion, defense counsel asked for a recess in order to confer with their client; the recess was granted. During this recess, both attorneys, petitioner and his sister, retired to a conference room and together they discussed the possibilities that then existed, namely, going on to trial on one of the murder indictments or the entry of a guilty plea. In previous discussions with the prosecutor, the defense attorneys had determined what effect a plea of guilty to one indictment would have on the other. It was also known to the attorneys that petitioner had one pre-existing felony conviction against him. The prosecutor informed the attorneys that the state was willing to accept a plea of guilty to first degree murder to Indictment No. 7780, the Ramey murder, and it would offer a recommendation of mercy. Furthermore, the prosecutor agreed to move the Court to enter a *nolle prosequi* to Indictment No. 7779, the Matthews murder. Under applicable West Virginia law, conviction of murder in the first degree without a recommendation of mercy carries with it a sentence of life imprisonment without possibility of parole. With the mercy recommendation, the convicted person becomes eligible for parole after serving a minimum of ten years. W.Va.Code 61–2–1; 61–2–2; 62–3–15; 62–12–1. Petitioner's attorneys informed him and his sister of the position of the prosecuting attorney with respect to a recommendation of mercy if a guilty plea was entered to the Ramey indictment and of his willingness to move for dismissal of the Matthews indictment. They advised the petitioner that, in their professional opinion, considering the evidence against him and his prior record, his best course of action would be to plead guilty to the Ramey indictment (No. 7780). At the same time, they informed him and his sister that he had the right to plead not guilty to both indictments and have a jury trial thereon. They also told him it was the intention of the prosecutor to try him on the Matthews murder first. It is apparent from the record before us that counsel clearly explained the available alternatives open to the petitioner. It is equally clear from the testimony of the attorneys, petitioner's sister and petitioner himself that the final and ultimate choice was left to the petitioner.

After this discussion and explanation, petitioner decided to plead guilty to first degree murder of Clyde Ramey.

Subsequent to this conference with his attorneys and sister, petitioner returned to the courtroom and made his plea of guilty, whereupon the prosecuting attorney moved the Court to accept a recommendation of mercy, which the Court did. The prosecutor then moved the Court to enter a *nolle prosequi* on Indictment 7779 for the Matthews murder which the Court granted.

■ Petitioner claims that the refusal of the trial judge to allow a continuance in order to effectuate a mental examination prior to entering a plea deprived him of his constitutional rights. We find it impossible to accept such a contention since, upon the facts of this case, it is evident that at the time of the commission of the alleged offenses he possessed sufficient mental capacity to appreciate the criminality of his conduct and to conform his conduct to the requirements of the law, and that when he pleaded guilty to the charge of first degree murder he was clearly capable of understanding the proceedings against him and to confer intelligently about the case with his attorneys and his sister. In fact, the petitioner for *personal reasons*, chose to plead to the indictment returned in the Ramey murder rather than to the one for the murder of Christine Matthews. In any event, the denial of a motion for a pre-trial mental examination cannot be assailed except for a clear abuse of discretion. Thomas v. Cunningham, 313 F.2d 934, 940 (4th Cir. 1963); Hawks v. Peyton, 370 F.2d 123 (4th Cir. 1966), cert. den. 387 U.S. 925, 87 S.Ct. 2044, 18 L.Ed.2d 982 (1967). In this case, after examining the medical records upon which defendant's counsel based their motion for a mental examination, the trial court found the motion to be without merit. From evidence adduced at the evidentiary hearing, we cannot say the trial court abused its discretion. Moreover, it now appears to be petitioner's position that because of the consumption of alcohol and drugs he was unable to form the requisite intent to commit the crimes with which he was charged. We do not perceive voluntary intoxication to be a legal defense, Wheatley v. United States, 159 F.2d 599 (4th Cir. 1946), it may only reduce the degree of the crime or negative a specific intent. The question raised by this allegation goes not to the legality of defendant's detention, but to his guilt or innocence. The question of guilt or innocence, however, cannot properly be raised upon a petition for habeas corpus and it is not a ground for relief under such a writ. United States ex rel. Tisi v. Tod, 264 U.S. 131, 44 S.Ct. 260, 68 L.Ed. 590 (1924); Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

Petitioner's second allegation, that his guilty plea was unconstitutionally coerced, must fail because it is not supported by any credible evidence.

■ It is established law, of course, that if a guilty plea is induced by promises or threats which have the result of depriving such plea of the character of a voluntary act, then the plea is void and subject to collateral attack in a petition for a writ of habeas corpus. Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962). However, not every act or statement made by a prosecutor which has an influence upon the accused's decision to enter a guilty plea renders the plea involuntary.[1] Lassiter v. Turner, 279 F.

---

[1]. See Standards Relating to Pleas of Guilty, Recommended by the Advisory Committee on the Criminal Trial, American Bar Association Project on Minimum Standard for Criminal Justice, 64, wherein the following rule is laid down:

"3.1 Propriety of plea discussion and plea agreements.

(a) In cases in which it appears that the interest of the public in the effective administration of criminal justice (as stated in section 1.8) would thereby be served, the prosecuting attorney may engage in plea discussions for the purpose of reaching a plea agreement. He should engage in plea discussions or

Supp. 231 (E.D.N.C.1968). The true test of the voluntariness of a plea of guilty, as stated by the Fifth Circuit in Brown v. Beto, 377 F.2d 950 (5th Cir. 1967), would seem to be,

> "Whether, with all of the facts before him, including the advice of competent counsel, the plea was truly voluntary."

In the case at bar, the prosecuting attorney did not engage directly in plea negotiations with the petitioner, but dealt with his retained defense counsel. When the time arrived for a decision to be made, as we have indicated above, defense counsel fully advised petitioner of the alternatives available and of the possible consequences in the making of a choice. There is universal agreement among the attorneys, petitioner's sister, and petitioner himself, that the final decision was left to, and was ultimately made by, the petitioner.

■ Was this decision by the petitioner voluntary? We find it was. Both the petitioner and his sister testified at the evidentiary hearing in this case that the prosecutor came to the door of the conference room where the two attorneys and the petitioner and his sister were considering what course to follow and purportedly told them that if petitioner did not plead guilty that the prosecutor would "throw the book at him." The prosecutor denies making this statement. The defense attorneys who were present when the statement was purportedly made deny that it was made. The prosecutor testified that he opened the door and relayed a message that the Court was ready to proceed and this testimony is corroborated by the two defense lawyers. In light of the fact that the alternatives had been fully explained to the petitioner by his counsel,

we are of the opinion that this self-serving testimony, without more, on the part of the petitioner and his sister is of little persuasion and must be rejected. In a situation such as this, the burden is upon the petitioner to prove by a preponderance of the evidence that his plea was involuntary. Vanater v. Boles, 377 F.2d 898 (4th Cir. 1967). We find that petitioner's decision can be characterized only as a voluntary act.

■ Finally, the petitioner says that he had ineffective assistance of counsel. We find such an allegation in this case to be frivolous. Counsel, faced with two murder indictments against petitioner, a prior felony conviction and overwhelming evidence against petitioner, was able to secure an agreement whereby petitioner could become eligible for parole after serving ten years in prison. Petitioner's other alternative, if he stood trial and was convicted, was two possible life imprisonment sentences, without possibility of pardon or parole. It appears from the record before us that there was little doubt that the prosecutor had a case strong enough to invoke the harsher penalty.

■ Only in extreme instances where a petitioner's representation by counsel has been so inadequate as to amount to a "farce" can it be said that he has been deprived of his constitutional rights. Snead v. Smyth, 273 F.2d 838 (4th Cir. 1959); United States v. DiTommaso and Waugaman, 405 F.2d 385 (1968). Clearly, the action taken in this case, as shown by the record now before this Court, negates any other conclusion but that counsel was extremely effective and successful in their representation of petitioner.

This Memorandum Opinion shall constitute the Court's findings of facts and

---

reach a plea agreement with the defendant only through defense counsel, except when the defendant is not eligible for or does not desire appointment of counsel and has not retained counsel.

(b) The prosecuting attorney, in reaching a plea agreement, may agree to one or more of the following, as dic-

tated by the circumstances of the individual case:

\* \* \* \* \*

(i) to make or not to oppose favorable recommendations as to the sentence which should be imposed if the defendant enters a plea of guilty or nolo contendere; \* \* \*."

conclusions of law under Rule 52 of the Federal Rules of Civil Procedure.

We express our appreciation to Mr. Dan C. Robinson, of the Huntington Bar, for accepting and diligently carrying out the assignment to represent the petitioner herein without any expectation of pay.

### ORDER

For the reasons above appearing, it is hereby

Ordered that the petitioner be, and he is, denied the relief prayed for and that his said petition and this action be, and they are, hereby dismissed.

