486 P.2d 1025

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Donald A. WOZNIAK, Defendant-Appellant.**

**No. 10715.**

Supreme Court of Idaho.

June 30, 1971.

**314**

Thomas A. Mitchell, Coeur d'Alene, for defendant-appellant.

Robert M. Robson, Atty. Gen., Boise, and Thomas C. Morris, Pros. Atty., St. Maries, for plaintiff-respondent.

PER CURIAM.

At approximately noon, on Saturday, March 7, 1970, Edward Jewett, the proprietor of Holstein's Bar in St. Maries, Idaho, phoned the sheriff's department for assistance involving an alleged disturbance. Shortly thereafter, the arresting officer, John Adams arrived in uniform. Officer Adams told Donald A. Wozniak, appellant, that Jewett wanted him to leave the bar and the appellant replied by asking the officer if he had an arrest warrant. When the officer stated that he did not have a warrant, the appellant repeatedly used loud, foul and abusive language toward the police officer. There were others present in the bar at this time including a woman. The police officer then left for the purpose of obtaining an arrest warrant as an outgrowth of Jewett's complaint. At that time Wozniak stated he was going up to the Gem State Bar and that the officer could find him there. The officer got into his patrol car and left for the purpose of obtaining a warrant, but, as he stated:

> "I proceeded to my car and proceeded up on College, which I radioed the sheriff's office and asked them to get hold of Mrs. Irvine (the city judge) and then I thought about the person's attitude, his overall thinking about him [sic], of his hostile mood, his beligerency, and I thought he might get in another fight or else hurt himself or somebody else when he proceeded toward the Gem State."

Adams testified he decided to return to the Gem State Bar and arrest appellant immediately rather than waiting to obtain a warrant since it was Saturday and there might be some difficulty in getting hold of the judge. The time that elapsed between Adams leaving the Holstein Bar and returning to the Gem State Bar was, as he explained, only a "minute or two."

Adams then went to the Gem State Bar where he found the appellant on the phone and there arrested the appellant for disturbing the peace, based upon the conduct directed at Adams in Holstein's Bar. Having arrested the appellant at the Gem State Bar, Adams then took the appellant to his patrol car, placing the appellant in the back seat, and proceeded toward the sheriff's department where the city jail is located.

As Adams and the appellant were traveling down Main Street in the police car, the appellant stated: "All for a misdemeanor. Have you ever seen my 12-guage shotgun? For this I am going to kill your ass." Adams then asked the appellant if he was threatening him and the appellant replied by stating "I am going to kill your ass." Adams stated that the threats made him "think twice" as he stated "he didn't know whether to keep on going or to stop and let him go." On cross-examination Adams further testified:

"It is for that he threatened my life, it slowed me up in my duties. I didn't know whether or not to go on through with it or not. I think the man [appellant] would kill me if he had the chance, and I took it as a great threat. It did slow me up because I thought twice about going to the court and the judge."

Upon arriving at the sheriff's department they got out of the police car and the appellant spit in the officer's face. The appellant still conducted himself in a hostile and uncooperative manner. Adams grabbed the appellant, shoved him up the steps and into the sheriff's department, whereupon the appellant again began cursing and using foul and abusive language toward Adams.

At this point, inside the sheriff's department, the appellant again directed his wrath at Adams in foul and abusive terms. All of the foregoing conduct occurred while the appellant was in an angry and hostile mood. The defense did not raise the issue of intoxication. In Adam's opinion, defendant was not intoxicated. The appellant was thereafter incarcerated in the

county jail on the grounds of disturbing the peace.

On Monday, March 9, 1970, officer Adams signed and filed a criminal complaint against the appellant charging him with resisting an executive officer in violation of Section 18–2703, Idaho Code, in the following language:

"The said Floyd Charles Robert a/k/a Donald A. Wozniak, on or about the 7th day of March, A.D., 1970 at and in the County of Benewah, State of Idaho, he then and there being did then and there willfully, unlawfully, intentionally, and feloniously, attempt by means of threats to deter or prevent an executive officer from performing his duty imposed upon such officer by law to wit: The defendant threatened to· kill John Adams, a police officer in the City of St. Maries, if said officer continued in his efforts to arrest defendant."

On March 11, 1970, the appellant was afforded a preliminary hearing and bound over to district court for trial.

The prosecuting attorney for Benewah County, subsequently filed an information charging the appellant, as above, on March 12, 1970. The appellant was tried on April 13 and 14, and convicted by a jury as charged. From said judgment of conviction, the appellant prosecutes this appeal. Appellant has never been tried for the initial and lesser charge of disturbing the peace.

 Appellant first assigns error to the selection of the statute he was charged with and the applicability of that statute, I.C. § 18–2703 [1] as compared to § 18–705.[2] Both deal with resisting officers. The former with resisting executive officers,

---

[1] "Every person who attempts by means of any threat or violence to deter or prevent any executive officer from performing any duty imposed upon such officer by law, or who knowingly resists by the use of force or violence, such officer, in the performance of his duty, is punishable by fine not exceeding $5,000 or imprisonment in the state prison not exceeding five years, or both."

[2] "Every person who wilfully resists, delays or obstructs any public officer, in the discharge, or attempt to discharge, of any duty of his office, when no other punishment is prescribed, is punishable by fine not exceeding $5,000, and imprisonment in the county jail not exceeding one year."

the latter with resisting public officers. Wozniak maintains that he should have been charged with the latter, a misdemeanor, or alternatively, that the co-existence of the two laws providing different punishments for basically the same conduct is unconstitutional. I.C. § 18–705, the misdemeanor/public officer at law, is intended to be more general in application than § 18–2703, the felony/executive officer law. That is, public officer means an officer of the judicial, legislative, *or* executive branch and the legislature has made interference with their performance of a duty a felony or a misdemeanor depending on the elements of the interference. For example, resisting, delaying or obstructing any public officer (which includes executive officers) when no other punishment is prescribed, is an indictable misdemeanor under § 18–705. Under § 18–2703 any person who attempts by means of any *threat* or *violence* to deter any executive officer is guilty of a felony. From an examination of the record, it appears that appellant's conduct was within the meaning of § 18–2703. *See* State v. Emory, 55 Idaho 649, 652–653, 46 P.2d 67 (1935); I.C. § 19–510; People v. Buice, 230 Cal.App.2d 324, 40 Cal.Rptr. 877, 884 (1964) construing a statute very similar to I.C. § 18–2703.

■ Assignment of error no. 15 raises a question regarding the trial court's failure to instruct the jury concerning the delay in making the arrest. Since the officer did not arrest Wozniak in Holstein's Bar, but waited until several minutes later when Wozniak had progressed down the street to the Gem State Bar, appellant contends the officer no longer had the power to arrest for a misdemeanor committed in his presence. It should first be noted that I.C. § 19–603(1) places no time limit on an in-presence misdemeanor. An arrest without a warrant for a misdemeanor made within a prompt and reasonable time after the offense is valid. In the case at bar, Adams was in the process of obtaining a warrant to arrest Wozniak, but after a few minutes realized that he did not need one under such circumstances. Although such conduct on the part of the officer was not the most desirable, it was reasonable and prompt under the circumstances. *See* Hill v. Levy, 117 Cal.App.2d 667, 256 P.2d 622, 624 (1953); People v. Sessa, 43 Misc.2d 24, 250 N.Y.S.2d 193, 195–196 (1964); 5 Am.Jur.2d Arrest § 33 at p. 725, 58 A.L.R.2d 1059, § 2.

■ A final question concerning the arrest of appellant involves the assignment of error that the trial court failed to instruct as to the reasonableness of the time between the alleged criminal conduct and the actual arrest. It should be noted that the defense did not request such an instruction; nevertheless, the trial court did give an instruction as to the general law regarding arrest quoting I.C. § 19–601,[3] I.C. § 19–602,[4] and I.C. § 19–603.[5] I.C. § 19–2132 governs instructions to the jury and requests for instructions. The case of State v. Patterson, 60 Idaho 67, 77–78, 88 P.2d 493 (1939), has interpreted this section as requiring the court to instruct the jury with respect to general principles of the law pertinent to the case. How-

3. "An arrest is taking a person into custody in a case and in the manner authorized by law. An arrest may be made by a peace officer or by a private person."

4. "An arrest is made by an actual restraint of the person of the defendant, or by his submission to the custody of an officer. The defendant must not be subjected to any more restraint than is necessary for his arrest and detention."

5. "A peace officer may make an arrest in obedience to a warrant delivered to him, or may, without a warrant, arrest a person: 1. For a public offense committed or attempted in his presence. 2. When a person arrested has committed a felony, although not in his presence. 3. When a felony has in fact been committed and he has reasonable cause for believing the person arrested to have committed it. 4. On a charge made, upon a reasonable cause, of the commission of a felony by the party arrested. 5. At night, when there is reasonable cause to believe that he has committed a felony."

ever, in the absence of a request, the court's failure to instruct upon a *particular* point cannot be assigned as error. *See also* State v. Fox, 52 Idaho 474, 16 P.2d 663 (1932); State v. Puckett, 88 Idaho 546, 401 P.2d 784 (1965). Therefore, we hold that the trial court adequately instructed the jury regarding the issues of this case.

The assignments of error numbered 2, 12 and 17 concern the constitutionality and the applicability of our felony-threat statute (I.C. § 18–2703) as applied to Wozniak's actions. It has long been established by both the United States Supreme Court and various state courts that not all speech is constitutionally protected. In Chaplinsky v. New Hampshire, 315 U.S. 568, at pp. 571–572, 62 S.Ct. 766, at p. 769, 86 L.Ed. 1031 (1942), the Court therein stated:

"[I]t is well understood that the right of free speech is not absolute at all times and under all circumstances. There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which has never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace."

The fact that a threat of violence alone may constitutionally constitute a crime is illustrated in Watts v. United States, 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969). Therein, 18 U.S.C.A. § 871(a) was challenged as an abridgment of Watts' First Amendment rights. That section prohibits one from knowingly and willfully making any threats to take the life of or inflict bodily harm upon the President and other high federal officers. The Court stated at page 707, 89 S.Ct. at page 1401:

"Certainly the statute under which petitioner was convicted is constitutional on its face. The Nation undoubtedly has a valid, even an overwhelming, interest in protecting the safety of its

Chief Executive and in allowing him to perform his duties without interference from threats of physical violence * * *. Nevertheless, a statute such as this one, which makes criminal, a form of pure speech, must be interpreted with the commands of the First Amendment clearly in mind. What is a threat must be distinguished from what is constitutionally protected speech."

The Court went on to hold at page 708, 89 S.Ct. at page 1402 that the violation here was "a kind of very crude offensive method of stating a *political* opposition to the President" (emphasis added) which is constitutionally protected due to the context and conditional nature of the statement coupled with the reaction of the listeners.

▬ Pure speech in the form of threat is not unconditionally constitutionally protected and may validly be made a criminal offense. However, what is a threat must be distinguished from what is constitutionally protected speech. Appellant's statement in our case that "have you seen my 12-guage shotgun?" and "I will kill your ass" is not constitutionally protected speech (*see also* United States v. Patillo, 431 F.2d 293 at 296 (4th Cir., 1970). The words of Wozniak may readily be classed as a threat which was directly communicated to the officer and which made him "think twice" about carrying on his duty.

▬ The question of whether the appellant, by stating he was going to kill officer Adams, intended to threaten Adams for the purpose of deterring or preventing him from performing his duty, was a question of fact which was properly submitted to the jury. *See* State v. Coy, 40 Wash. 2d 112, 241 P.2d 205 (1952), which involved a Washington statute almost identical to I.C. § 18–2703. The Washington Court stated at pages 206–207:

"The evidence shows that an executive officer, the state patrolman, was performing a duty imposed upon him by law—the issuance of a traffic citation.

A jury might reasonably infer that the entire course of conduct adopted by the respondent, * * * was an attempt to deter or prevent him from issuing the citation."

*See also* Knight v. United States, 310 F. 2d 305, at pp. 307–308, (5th Cir., 1962).

■ If the question of appellant's intent is a jury question, the only real issue appellant could raise in this respect is that of sufficiency of evidence. A review of the record shows sufficient evidence from which the jury could properly find that appellant's threats to the police officer were made with the requisite intent and for the essential purpose of attempting to deter the officer in the performance of his duty.

Appellant assigns error to instruction no. 10 of the trial court alleging the instruction is a misstatement of I.C. § 18–2703. However, the trial court was not stating § 18–2703, he was instructing the jury that under Idaho law a threat to an executive officer can constitute the crime of resisting an officer.

Appellant has also assigned error to instruction no. 12 in that the instruction is not part of the statute (presumably I.C. § 18–2703) and that the general law of resisting arrest does not include a category for threats. The instruction was not intended to be a statement of part of the statute. The instruction explains what the threat must constitute regarding the reactions of the officer to whom it was made.

■ The appellant next assigns error to the district court's denial of two motions made for change of venue. The first assignment of error is directed to the denial of the defense attorney's motion for change of venue made on April 13, 1970. The defense attorney's motion was a combination of a motion for change of venue and a challenge to the jury panel. It should be noted that in both attempts the defense counsel was procedurally incorrect. That is, in his motion for change of venue due to the prejudice in the county, the defense counsel did not comply with I.C. § 19–1802 which deals with the form of application for a motion for change of venue. The application was not made in writing and it was not verified by an affidavit of the defendant, a copy of which should have been served upon the prosecuting attorney at least one day before the application was made. The challenge to the panel was made after the jury had been selected and sworn which is in contravention of the mandate of I.C. § 19–2006. Nevertheless, the trial court overlooked these procedural inadequacies and stated:

"[T]here appears to be no difficulty in selecting the jury, I think, to base any change, and I don't think other than hearing the arraignment in the court, I don't think they had heard of the case. This is certainly not the publicity or prejudice from publicity that would require a change of trial because of inability to find an impartial jury. The motion will be denied."

The prejudice against a defendant must appear to be clear and convincing so as to prevent him from receiving a fair and impartial trial. The most recent of these cases is State v. Bitz, 93 Idaho 239, 242–243, 460 P.2d 374 (1969); *see also* State v. Breyer, 40 Idaho 324, 232 P. 560 (1925); State v. McLennan, 40 Idaho 286, 231 P. 718 (1925); State v. Hoagland, 39 Idaho 405, 228 P. 314 (1924).

■ The appellant has also alleged that the jury panel's bias and prejudice is shown in that there was difficulty in selecting the jury and also by the fact that some of them had already heard of the case and therefore were not totally ignorant of the facts and issues involved. This allegation is insufficient to warrant reversal. Along with the Idaho cases cited, *supra*, the language of People v. Speck, 41 Ill.2d 177, 242 N.E.2d 208 at 213 (1968), is relevant:

"Defendant argues that the fact that so many jurors were excused for cause demonstrates that the degree of prejudice in the county was so great that the defendant could not receive a fair trial. On the contrary, we are of the opinion

that a large number of excused jurors rather tended to demonstrate the care which the court exercised in assuring that the defendant had a fair and impartial jury. * * * The 12 jurors finally selected had stated that they had no such preconceived notions of the defendant's guilt which would prevent their rendering a fair and impartial verdict, although all of them stated that they had read something about the case."

The case of Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961), which vacated Irvin's conviction on the grounds of wrongful denial for change of venue, stated that there had to be a clear and convincing buildup of prejudice (366 U.S., at 725, 81 S.Ct. 1639). In the *Irvin* case there had been a "barrage of newspaper headlines, articles, cartoons and pictures was unleashed against him during the six or seven months preceding his trial." (366 U.S., at 725, 81 S.Ct., at 1644). In the case at bar, no such pattern of deep and bitter prejudice was demonstrated to be present.

■■■ Appellant has further assigned error to the trial court's not excusing juror Nelson for cause. Juror Nelson was excused on the appellant's first pre-emptory challenge and did not participate in the trial. Thus the error, if any, claimed by the appellant in not excusing Nelson for cause, would have to be shown by the fact that this resulted in one or more of the *other* jurors deliberating in the case who were biased. Appellants failed to establish this. On the contrary, the record demonstrates that fair and impartial jurors were available and selected to participate in the trial of the charge against appellant.

■■■ Appellant next assigns error to the trial court's admitting testimony of defendant's conduct prior to and subsequent to his violation of I.C. § 18–2703. However:

"This court has long held that the acts and conduct, declarations, statements, and admissions of the accused, before, at the time of, or subsequent to arrest, when not the result of unconstitutional coercion, are admissible in evidence against him." State v. Bock, 80 Idaho 296, 307, 328 P.2d 1065, 1071 (1958). *See also* People v. Buice, *supra,* 40 Cal. Rptr. at page 888, wherein testimony of prior offenses and conduct was admissible in that it "demonstrated a contemptuous attitude for the authority of law enforcement officers." Again in People v. Buice, *supra,* at page 888, the Court stated: "The law is well established that evidence of other offenses and acts are admissible to show, among other things, criminal intent, knowledge or motive, [citing cases]."

■■■ Appellant next assigns error to the trial court's denying defendant's motion for an advisory verdict of acquittal at the close of the State's case and at the close of the entire case. (What appellant has reference to is an advisory instruction to acquit, I.C. § 19–2123). Appellant bases these assignments of error first on the fact that the statement "I will kill your ass" by Wozniak was not proven to be a threat. We have discussed this point earlier in the opinion and concluded that such a statement as interpreted by the officer and under those conditions did, in fact, constitute a threat. Appellant's second basis for the assignments of error is that the State charged Wozniak under the wrong statute and that under the correct statute the threat alone does not constitute the offense. Again, we have discussed and decided this issue earlier in this opinion. It should be added that the granting or denying of an advisory instruction to acquit is in the first instance within the sound discretion of the trial court and such discretion will not be reversed on appeal unless a clear abuse is shown. We find no such abuse. *See* State v. Gish, 87 Idaho 341, 351–352, 393 P.2d 342 (1964).

A final assignment of error is that the trial as a whole lacked fundamental fairness. After a review of each assignment of error and our conclusions regarding these assignments of error, we hold that the trial as a whole did not lack fundamental fairness.

Finally, some discussion of the defendant's *pro se* brief is warranted at this time. Many of the defendant's *pro se* assignments of error are repetitious of the assignments of error made by his attorney and dealt with *supra*. A number of defendant's other assignments of error are not supported by the record and are not part of the record. The remainder of appellant's *pro se* assignments of error will be discussed hereinafter.

 Appellant has assigned as error the inadequacy and ineffectiveness of his appointed counsel. However, failure to achieve acquittal, mistakes in judgment or errors in trial tactics are not sufficient grounds for a claim of ineffectiveness of counsel to deprive appellant of his Sixth Amendment rights. *See* United States v. Hammonds, 138 U.S.App.D.C. 166, 425 F. 2d 597, 601 (1970); Hinton v. Henry, 311 F.Supp. 652, 654 (D.C.N.C.1969). To constitute ineffectiveness of counsel, the circumstances must be so inadequate as to render appellant's trial "a farce or mockery of justice." While these words are not to be taken literally, they are nonetheless descriptive of the principles that the accused has a heavy burden in proving that his counsel is ineffective. Appellant has not met that burden in this case. United States ex rel. Stephenson v. Mazurkiewicz, 311 F.Supp. 1202, 1204 (D.C. Pa.1970); Johnson v. Coiner, 308 F.Supp. 1373, 1377 (D.C.W.Va.1970); Bruce v. United States, 126 U.S.App.D.C. 336, 379 F.2d 113, 116 (1967).

 Regarding appellant's *pro se* assignments of error involving facts not included or incorrect facts which are included in the record, the appellant cannot reserve his right to assign error to testimony to which he did not object or move to strike. State v. Larsen, 81 Idaho 90, 100, 337 P.2d 1 (1959); State v. Cox, 55 Idaho 694, 700, 46 P.2d 1093 (1935). Also a party has but ten days after receipt of the transcript to claim errors and omissions thereto; if no designation of error is made and served within such time upon the district court and all adverse parties, the right to assign error thereto is lost. I.C. § 19–2402 and I.C. § 10–509(2); Aker v. Aker, 52 Idaho 50, 60, 11 P.2d 372 (1932).

 Regarding appellant's *pro se* assignments of error that hearsay evidence was considered in his sentencing, it has been held by this Court that the trial court, in sentencing a person convicted of a crime, may properly consider such factors in the presentence report as hearsay evidence or files of governmental agencies. State v. Moore, 93 Idaho 14, 17–18, 454 P.2d 51 (1969).

 Finally, appellant's *pro se* brief seems to assign error to the fact that appellant was not entitled to choose which attorney would represent him. However, an indigent defendant is not entitled to choose which attorney will be appointed to represent him unless extraordinary circumstances exist. Such circumstances did not exist in this case. *See* State v. Fagerstrom, 286 Minn. 295, 176 N.W.2d 261, 264 (1970).

Judgment affirmed.