539 P.2d 556

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Ernest H. TUCKER, Defendant-Appellant.**

**Ernest H. TUCKER, Plaintiff-Appellant,**

v.

**STATE of Idaho, Defendant-Respondent.**

**Nos. 11093, 11139.**

Supreme Court of Idaho.

July 22, 1975.

Fred Kennedy of Quane, Kennedy & Smith, Boise, for appellant.

W. Anthony Park, Atty. Gen., J. Dennis (J. D.) Williams and Lynn E. Thomas, Deputy Attys. Gen., and William F. Lee and James P. Kaufman, Asst. Attys. Gen., State of Idaho, for respondent.

## ON REHEARING

McFADDEN, Justice.

The previous opinion in this case is withdrawn and this opinion is hereby substituted.

This case arises from the conviction after a jury trial and sentencing of Ernest H. Tucker, defendant-appellant. Tucker was convicted of the crime of unlawful sale of a narcotic (I.C. § 37–2717, repealed by S. L.1971, Ch. 215). The appellant appeals from the judgment of conviction, denial of his motion for a new trial, and judgment dismissing his petition for post-conviction relief under I.C. § 19–4901. Upon the basis of the appeal from the judgment of conviction and denial of the motion for a new trial, we remand for further evidentiary hearings. The trial court is directed to dismiss without prejudice his petition for post-conviction relief.

On the night of November 19, 1970, Tucker went to the apartment of an acquaintance and met two undercover agents of the Boise City—Ada County Vice and Narcotics Squad who represented themselves as purchasers interested in buying "lost" explosives. An undercover agent testified that Tucker told the agents that the explosives were inaccessible, that Tucker asked if they were interested in narcotics, and that the agents replied affirmatively. According to the agents' testimony, Tucker left to make a phone call to arrange for the sale of "six lids" of marijuana at an agreed price. The agents testified that, shortly afterwards, one Lu-

cas (originally a co-defendant who pleaded guilty) arrived with the marijuana and that Tucker told Lucas to sell it to the agents. The agents gave Lucas money in the agreed amount and took the marijuana from Lucas.

Tucker testified that he met with the undercover agents to discuss the possible lawful sale of guns and ammunition. According to Tucker, the agents inquired as to the availability of marijuana and Tucker told the agents that he knew nothing about drugs or their availability. Tucker testified that Lucas arrived at the apartment while he was in the bathroom, that when he returned to the living room Lucas was talking with the agents in the corner of the room, and that he did not hear their conversation. According to Tucker, Lucas left shortly thereafter and then he left the apartment. Tucker denied making any phone calls to arrange the sale of drugs.

At trial, the jury returned a verdict finding Tucker guilty of the crime of unlawful sale of narcotics. Judgment of conviction was entered and Tucker was sentenced to a term in the state penitentiary.

During the pre-sentence investigation, an undercover agent disclosed to the pre-sentence investigator the existence of a tape recording of the conversations between Tucker and the agents on the night of November 19, 1970. Tucker moved for a new trial claiming discovery of the existence of the tapes. This motion was denied. Tucker filed a petition for post-conviction relief under I.C. § 19–4901 which was also denied.

Tucker appeals from the judgment of conviction, the denial of his motion for a new trial, and the judgment dismissing his petition for post-conviction relief. Tucker assigns numerous errors on appeal. Although primarily this opinion will be focused on the issue of whether Tucker was denied the competent assistance of counsel prior to and during his trial, such other assignments of error will be considered as are necessary for the disposition of the appeal. Before analyzing the specific facts by which the assistance of counsel issue arises, we must discuss the standard by which questions of competent assistance of counsel should be reviewed.

The right to counsel in criminal actions brought by the state of Idaho is guaranteed by the Sixth Amendment [1] to the United States Constitution and Article 1, Section 13 of the Idaho State Constitution.[2] *Accord, Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed. 2d 799 (1963); *State v. McClellan,* 96 Idaho 569, 532 P.2d 574 (1975); *State v. Wozniak,* 94 Idaho 312, 486 P.2d 1025 (1971); *Pharris v. State,* 91 Idaho 456, 424 P.2d 390 (1967). See, *Bement v. State,* 91 Idaho 388, 422 P.2d 55 (1966). The right to counsel includes the right to the effective assistance of counsel. *Accord, McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *United States v. DeCoster,* 159 U.S.App. D.C. 326, 487 F.2d 1197 (1973). *See, Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); *State v. McClellan, supra; State v. Wozniak, supra.*

In the past, this court has reviewed issues relating to the competency of counsel by the "farce or mockery" standard:

"To constitute ineffectiveness of counsel, the circumstances must be so inadequate as to render appellant's trial 'a farce or mockery of justice.'" *State v. Wozniak,* 94 Idaho 312, 320, 486 P.2d 1025, 1033 (1971).

This standard has been modified, but not rejected by *State v. McClellan, supra.* However, other jurisdictions have chosen a different standard of review. *Coles v. Peyton,* 389 F.2d 224 (4th Cir., 1968);

---

1. "In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defense." 6th Amend., U.S.Const.

2. "Guaranties in criminal actions and due process of law.—In all criminal prosecutions, the party accused shall have the right * * * to appear and defend in person and with counsel." Art. 1, § 13, Idaho Const.

*Moore v. United States,* 432 F.2d 730 (3d Cir., 1970); *West v. Louisiana,* 478 F.2d 1026 (5th Cir., 1973); *United States v. DeCoster,* 159 U.S.App.D.C. 326, 487 F.2d 1197 (1973); *Beasley v. United States,* 491 F.2d 687 (6th Cir., 1974); *State v. Gilmore,* 76 Wash.2d 293, 456 P.2d 344 (1969); *State v. McCarthy,* 112 N.H. 437, 298 A.2d 740 (1972); *State v. Mahoney,* 16 Md.App. 193, 294 A.2d 471 (1972); *State v. Kahalewai,* 54 Haw. 28, 501 P.2d 977 (1972); *State v. Harper,* 57 Wis.2d 543, 205 N.W.2d 1 (1973); *State v. Williams,* 207 N.W.2d 98 (Iowa 1973); *Commonwealth v. Saferian,* 315 N.E.2d 878 (Mass.1974); *Ex parte Gallegos,* 511 S.W.2d 510 (Tex.Cr.App., 1974); *State v. Thomas,* 203 S.E.2d 445 (W.Va.1974); *Pitts v. Glass,* 231 Ga. 638, 203 S.E.2d 515 (1974); *Risher v. State,* 523 P.2d 421 (Alaska 1974); *Rook v. Culp,* 526 P.2d 605 (Or.App., 1974).

■ The "farce or mockery" standard has been criticized on the grounds that the standard does not adequately protect the right to the assistance of counsel. The standard places an undue burden upon the defendant and is vague and difficult to apply. Accord, *Risher v. State,* 523 P.2d 421 (Alaska 1974); *United States v. DeCoster,* 159 U.S.App.D.C. 326, 487 F.2d 1197 (1973). See, Finer, Ineffective Assistance of Counsel, 58 Cornell L.Rev. 1077 (1973). One commentator suggests that "the 'mockery' test requires such a minimal level of performance from counsel that it is itself a mockery of the sixth amendment". Bazelon, "The Defective Assistance of Counsel", 42 Cincinnati L.Rev. 1, 28 (1973). Accordingly, we reject the "farce or mockery" standard. To the extent that the following cases are in conflict with this opinion, we overrule *State v. McClellan, supra;*

*State v. Wozniak, supra; Pulver v. State,* 93 Idaho 687, 471 P.2d 74 (1970).

It is our opinion that the best enunciation of defense counsel's obligation is found in *United States v. DeCoster,* 159 U.S.App.D.C. 326, 487 F.2d 1197, 1202 (1973)—"a defendant is entitled to the reasonably competent assistance of an attorney acting as his diligent conscientious advocate". We adopt this standard.

Other courts have chosen to frame their standard of review of the adequacy of the assistance of counsel in terms of the "reasonably effective assistance of counsel".[3] *West v. Louisiana,* 478 F.2d 1026 (5th Cir., 1973); *State v. Gilmore,* 76 Wash.2d 293, 456 P.2d 344 (1969); *State v. Kahalewai,* 54 Haw. 28, 501 P.2d 977 (1972); *Ex parte Gallegos,* 511 S.W.2d 510 (Tex.Cr.App., 1974); *Pitts v. Glass,* 231 Ga. 638, 203 S.E.2d 515 (1974). See, *State v. Mahoney,* 16 Md.App. 193, 294 A.2d 471 (1972); *State v. Williams,* 207 N.W.2d 98 (Iowa 1973). We draw no distinction between the terms "reasonably competent assistance of counsel" and "reasonably effective assistance of counsel"; the result of rendering "reasonably competent assistance of counsel" must be "reasonably effective assistance of counsel". However, the phrase, "reasonably effective assistance of counsel," raises a problem of semantics in that "effectiveness" may be equated with success. No implications regarding the competency of counsel should be drawn from counsel's failure to win acquittal for his client. Thus, we frame the standard in terms of "reasonably competent assistance of counsel".

The words, "reasonably competent assistance of counsel," provide only a shorthand label to summarize the standard. The American Bar Associations's "Standards

---

3. Some jurisdictions have established a standard of comparison; the questioned counsel's performance is contrasted to the normal and customary skill possessed by other attorneys. *Moore v. United States,* 432 F.2d 730, (3d Cir., 1970); *Beasley v. United States,* 491 F.2d 687 (6th Cir., 1974); *State v. Mc-*Carthy,* 112 N.H. 437, 298 A.2d 740 (1972); *State v. Harper,* 57 Wis.2d 543, 205 N.W.2d 1 (1973); *Commonwealth v. Saferian,* 315 N.E.2d 878 (Mass.1974); *State v. Thomas,* 203 S.E.2d 445 (W.Va.1974); *Rook v. Culp,* 526 P.2d 605 (Or.App., 1974); *Risher v. State,* 523 P.2d 421 (Alaska 1974).

for the Defense Function" suggest the duties owed by counsel to his client and to the court. We recognize these standards,[4] insofar as they are·applicable to define the duties owed by defense counsel to his client, as an authority by which questions of the competent assistance of counsel may be analyzed. ABA Standards, "The Defense Function" (1971). *Accord, State v. Harper,* 57 Wis.2d 543, 205 N.W.2d 1 (1973); *United States v. DeCoster, supra. See, Coles v. Peyton,* 389 F.2d 224 (4th Cir., 1968). In recognizing these standards, we expressly reserve for future determination whether a violation of any one standard will constitute a denial of the right to the reasonably competent assistance of counsel.[5]

Tucker was represented by appointed counsel at his preliminary hearing; he retained counsel for trial and then retained different counsel for his motion for a new trial, his petition for post-conviction relief, and for this appeal. It is the conduct of the retained counsel who represented Tucker at trial (hereinafter referred to as trial counsel) that is questioned on appeal.[6]

Tucker argues that he was denied the competent assistance of counsel in four instances—counsel's failure to discover the existence of the tape recording prior to or during trial, counsel's failure to object to the testimony of Lucas (the co-defendant) as to a phone call regarding delivery of the marijuana to the apartment; counsel's failure to request the trial court to determine the entrapment issue as a matter of law rather than submitting the issue to the jury; counsel's failure to object to the pre-sentence investigative report or to offer rebuttal evidence to the report. The latter three instances will be discussed together first and the first allegation will be discussed in detail later.

The latter three instances of trial counsel's representation which Tucker alleges to be examples of constitutionally inadequate representation may fall within that segment of the advocate's role called "trial tactics" or "strategy choices". Because of the very nature of the advocate's role in the criminal justice system, questions regarding counsel's conduct of the trial are difficult to analyze objectively.

"A retrospective examination of a lawyer's representation to determine whether it was free from any error would exact a higher measure of competency than the prevailing standard. Perfection is hardly attainable and certainly is not the general rule, especially in professional work where intuitive judgments and spontaneous decisions are often required in varying circumstances. The artistry of the advocate is difficult to judge retrospectively because the elements influencing judgment usually cannot be captured on the record. The kaleidoscopic range of possibilities often seems limitless, and it is proverbial that the finest ideas emerge on the way back from the courthouse. The advocate's work, therefore, is not readily capable of later audit like a bookkeeper's. Of course, not all the activity of the advocate has this highly subjective quality. It is possible to examine the sufficiency of his preparation and the adequacy of his knowledge of the relevant law. * * *."

4. We note that these standards "are intended as guides for conduct of lawyers and as the basis for disciplinary action, not as criteria for judicial evaluation of the effectiveness of counsel * * *." ABA Standards, "The Defense Function" § 1.1(f) (1971). However, these standards certainly are relevant to this largely unexplored area. If the standards are intended to be a guide by which the conduct of counsel is to be judged on a disciplinary proceeding, these standards should also be considered when a court is called upon to judge counsel's conduct in terms of the defendant's constitutional rights.

5. The ABA Standards and the duties articulated in this opinion are intended as a starting point by which clearer guidelines as to the meaning of the reasonably competent assistance of counsel can be developed on a case by case basis.

6. Tucker does not argue, nor does the record indicate that his retained counsel had an insufficient period of time to prepare for trial.

*Moore v. United States,* 432 F.2d 730, 736, 737 (3d Cir., 1970).

▮ This court will not attempt "to second guess strategic and tactical choices made by trial counsel". *United States v. DeCoster,* 159 U.S.App.D.C. 326, 487 F.2d 1197, 1201 (1973). However, when counsel's trial strategy decisions are made upon the basis of inadequate preparation, ignorance of the relevant law, or other shortcomings capable of objective evaluation, the defendant may well have been denied the competent assistance of counsel.

Trial counsel's decision not to object to Lucas's testimony in regard to the phone call and his decision not to request the trial court to determine the entrapment issue as a matter of law, are decisions which may be strategy decisions based upon trial counsel's informed analysis. Lucas's testimony that he received a phone call which "prompted" him to go to the apartment but that he did not know who he was talking to may have been tactically favorable to Tucker. Submission of the entrapment issue to the court or the jury is optional under the Penal and Correctional Code. (I.C. § 18–101 et seq., effective Jan. 1, 1972, repealed effective April 1, 1972.) Thus, his decision to submit the question to the jury may have been based upon a considered analysis of the law and the progress of the trial. Trial counsel's decision not to object to certain statements in the pre-sentence investigative report nor to offer rebuttal testimony may again be a decision based upon a tactical choice. We are unable to determine from the record whether any of these instances, discussed above, constitute decisions based upon an informed choice of strategy or whether these decisions were made upon an uninformed or inadequate consideration of the tactical questions involved.

Tucker argues that he was denied the assistance of counsel because his counsel failed to conduct an adequate investigation in preparation for trial. He asserts that the existence of the tapes would have been disclosed by an adequate investigation.

Four undercover agents were involved in the transaction for which Tucker was charged. Two agents participated in the "buy" and two agents were stationed outside the apartment in which the meeting took place. According to testimony at the hearing on the motion for a new trial and at the hearing on the petition for post-conviction relief, the apartment was "bugged" with two microphones which were connected to a recording device and a listening device. The two agents outside the apartment operated the recording device and listened intermittently to the sounds transmitted from the apartment to the listening device. The tape recording was retained by the undercover agents but its existence was apparently not disclosed to the prosecuting attorney. During the pre-sentence investigation subsequent to the trial and prior to the entry of judgment, the tape recording was given to the pre-sentence investigator. She listened to portions of the recording and then returned the tape to the agent. Shortly after the pre-sentence investigator listened to the tape, the tape was returned to general circulation within the police department by an agent and so was automatically erased. Upon learning of the existence of the tape, counsel on appeal moved for a new trial. The tapes had been erased by the time this motion was argued. The record indicates that only one person —the pre-sentence investigator—listened to the recording and she listened to only a portion thereof. She stated that the portions of the tapes were illegible and that she had difficulty in relating the voices to the parties involved.

▮ Upon the basis of this record, Tucker submits that he was denied the right to counsel by the trial counsel's conduct. Inadequate preparation prior to trial has been held to be sufficient grounds to constitute a denial of the right to counsel. *McQueen v. Swenson,* 498 F.2d 207 (8th Cir., 1974); *Moore v. United States,* 432 F.2d 730 (3d Cir., 1970); *State v. Harper,* 57 Wis.2d 543, 205 N.W.2d 1 (1973). Given the complexities of the interaction be-

tween the prosecution function and the rights of the criminal defendant as is evident ·in this case, adequate preparation must be considered to be an integral element of the defense counsel's role in the adversary process.

> "Adequate preparation for trial often may be a more important element in the effective assistance of counsel to which a defendant is entitled than the forensic skill exhibited in the courtroom. The careful investigation of a case and the thoughtful analysis of the information it yields may disclose evidence of which even the defendant is unaware and may suggest issues and tactics at trial which would otherwise not emerge." *Moore v. United States,* 432 F.2d 730, 735 (3d Cir., 1970).

Without adequate preparation, defense counsel cannot properly discharge his advocate's duty. The ABA Standards furnish a guideline to the nature and the extent of the duty to investigate:

> "It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to guilt and degree of guilt or penalty. The investigation should always include efforts to secure information in the possession of the prosecution and law enforcement authorities. The duty to investigate exists regardless of the accused's admissions or statements to the lawyer of facts constituting guilt or his stated desire to plead guilty." ABA Standards, "The Defense Function", § 4.1 (1971).

At the hearing on the petition for post-conviction relief, an undercover agent who was outside the apartment during the transaction testified that he was not interviewed prior to trial by any attorney representing Tucker. Other than this testimony, the record is devoid of any direct references to trial counsel's pre-trial investigation or lack thereof. It should be noted the record discloses no discovery motions were filed.[7]

The record suggests that the state made no attempt to withhold knowledge of the existence of the tapes from the defendant or his counsel. An undercover agent, at the hearing on the petition for post-conviction relief, testified that he remarked to Tucker during an interrogation that the apartment "was bugged" and that the agents had a tape recording of the "buy". The names of the four agents who participated in the transaction and the surveillance were endorsed on the information as witnesses known to the prosecuting attorney. Three of the undercover agents, the two agents who participated in the transaction and one agent who was outside monitoring the "bugging" equipment, were called to testify. The other agent was subpoenaed, was present at the trial, but was not called to testify. An agent inside the apartment testified on direct examination that twice during the evening in question the agents, while Tucker was absent from the apartment, left the apartment to converse with the two agents stationed outside. On cross examination, Tucker's trial counsel did not inquire of the agent as to the agents stationed outside; however, he did read into the record portions of the agent's testimony at the preliminary hearing[8] which indicated that the agent did not mention that other agents were stationed outside the apartment. An undercover agent stationed outside the apartment testified on direct examination as to his observations of Tucker and Lucas entering and leaving the apartment; he did not mention the "bugs" or the existence of the tapes. Tucker's trial counsel chose not to cross-examine him.

▪▪▪ The record before us strongly suggests, but does not establish, that Tucker's trial counsel failed to discover the existence of the tapes because of his inade-

7. The recording would have been subject to discovery upon appropriate motion. I.C. § 19–1309. See, I.C.R. 16, 59.

8. Tucker was represented by appointed counsel at the preliminary hearing.

quate pre-trial investigation. Factual questions relating to the competency of counsel generally pose a dilemma for an appellate court attempting to review the record. Questions of competency of counsel usually arise after the trial record is made and the verdict has been rendered; thus the appellate court does not have before it a cogent factual record of the circumstances by which the issue arises. In this particular case, our task becomes even more difficult because the trial court was unable to review the record in light of the new standards. We will not attempt to evaluate the competency of counsel in this case; rather, upon the basis of Tucker's appeal from the denial of his motion for a new trial,[9] we remand for further proceedings to determine whether a new trial should be granted on the ground of inadequacy of counsel. See, *United States v. DeCoster,* 159 U.S. App.D.C. 326, 487 F.2d 1197, 1204–1205 (1973). Moreover, trial counsel must be given an opportunity to respond to the questions relating to his conduct of Tucker's defense raised by this appeal.

> "A lawyer whose conduct of a criminal case is drawn into question is entitled to testify concerning the matters charged and is not precluded from disclosing the truth concerning the accusation, even though this involves revealing matters which were given in confidence." ABA Standards, "The Defense Function", § 8.6 (1971).

Upon remand, the trial court is directed to conduct further hearings on the four instances of trial conduct cited by Tucker as constituting conduct such that he was denied his right to competent assistance of counsel. The defendant must show by a preponderance of the evidence that he was denied the reasonably competent assistance of counsel.

■ However, a showing that defendant was denied the reasonably competent assistance of counsel is not sufficient by itself to sustain a reversal of the conviction. The defendant, in most cases, must make a showing that the conduct of counsel contributed to the conviction or to the sentence imposed. *Accord, United States ex rel. Green v. Rundle,* 434 F.2d 1112 (3d Cir., 1970); *Risher v. State,* 523 P.2d 421 (Alaska 1974); *Rook v. Culp,* 526 P.2d 605 (Or.App.1974). See, *McQueen v. Swenson,* 498 F.2d 207 (8th Cir. 1974). Contra, *United States v. DeCoster,* 159 U.S.App. D.C. 326, 487 F.2d 1197 (1973); *Beasley v. United States,* 491 F.2d 687 (6th Cir., 1974); *Coles v. Peyton,* 389 F.2d 224 (4th Cir., 1968).

■ In this case we have an unique situation inasmuch as the recordings were erased through no fault on the part of the defendant and are no longer available for consideration. Only one person, the presentence investigator listened to the tapes. At the hearing on the new trial motion, she testified that she could not distinguish the voices on the tapes; that she heard several statements she thought were Tucker's and there seemed to be some talk of dynamite. She listened to only a small portion of the tapes, and except for a couple of instances she could not comprehend the gist of the conversation nor could she understand what was said.

Erasure of these tapes destroyed any opportunity for the defendant to have them examined or processed in order to make them more audible. Under this situation

---

9. Pursuant to ICR 33, Tucker filed his motion for a new trial alleging that the disclosure of the existence of the tapes constituted newly discovered evidence material to the case. By the time this motion was argued, the tapes had been erased; accordingly, the trial court treated the motion as being based on the ground of non-disclosure of evidence by the prosecution. The trial court denied the motion ruling that, under the facts of the case, the prosecution did not have a duty to disclose the existence of the tapes. The trial court did not rule upon Tucker's assertion that the tapes "could not have been, with reasonable diligence, discovered and produced at the trial by defendant or his attorney". The record before us does not indicate whether the issue of assistance of counsel was argued on the motion for a new trial.

the defendant is now unable to establish that the tapes could have assisted him in his defense. Failure to have this information must be held to be prejudicial in the event that the trial court should determine that trial counsel's representation failed to comport with the standards previously discussed. See *United States ex rel. Green v. Rundle*, 434 F.2d 1112 (3d Cir., 1970), where that court stated:

"In many instances ineffective assistance of counsel may have had so pervasive an effect on the process of guilt determination that it is impossible to determine accurately the presence or absence of prejudice. In other cases changes in circumstances since the original proceedings beyond petitioners' control, such as the death of a witness who was not called, may make it impossible at the time of the habeas corpus petition to determine prejudice. In such instances a finding of departure from the standard of normal competence requires without more, a new trial * * *." 434 F.2d at 1115.

We remand this case to the trial court for further hearings on the motion for new trial. The trial court is directed to hear such evidence as it deems necessary for resolution of the factual issue of whether Tucker was denied his right to the competent assistance of counsel. Trial counsel should be given an opportunity to testify as to the representation he rendered. The trial court, applying the standards articulated by this opinion, should determine if Tucker was denied his constitutional right to the competent assistance of counsel in any of the four instances cited. If that court finds that trial counsel's pre-trial investigation was inadequate, then Tucker must be granted a new trial, as we find from the record before us that trial counsel's investigation, if constitutionally inadequate, prejudiced Tucker's constitutional rights. Regarding the other three instances cited—the entrapment issue, Lucas's testimony as to the phone call, and counsel's failure to respond to the pre-sentence report—the trial court must determine if counsel's representation in any of these instances fell below the established standards. If the trial court finds that Tucker was denied the competent assistance of counsel in any of these instances, then the trial court must determine whether the conduct of counsel contributed to the conviction or to the sentence imposed. If such a finding is made, then Tucker must be granted a new trial or the sentence must be reconsidered.

As this case is remanded, it is incumbent upon this court to rule upon certain other assignments of error for guidance of the trial court in the event the court finds that Tucker was not denied his right to competent assistance of counsel.

Appellant claims that the trial court erred in submitting the legal issue of entrapment to the jury. Under the Penal and Correctional Code (§ 18–101(3)(b), § 18–213; see, S.L.1971, Ch. 143) which was in effect at the time of trial, but later repealed (see S.L.1972, Ch. 336), the defendant had the option to present the entrapment issue either to the court or to the jury. The defendant failed to exercise this option and left resolution of the issue with the jury. We find no error in the trial court's submission of the entrapment issue to the jury.

Appellant contends that the trial court erred in considering unsworn, uncorroborated statements in his pre-sentence investigation report. The trial court has wide latitude and discretion in considering material contained in a pre-sentence report which would otherwise be inadmissible under the rules of evidence at trial. *State v. Moore*, 93 Idaho 14, 18, 454 P.2d 51, 55 (1969). The record discloses that appellant was accorded the opportunity to examine the pre-sentence report and to explain and rebut adverse evidence. See, *State v. Rolfe*, 92 Idaho 467, 444 P.2d 428 (1968). We find no error in the trial court's consideration of the defendant's pre-sentence investigation report.

Appellant contends that the trial court imposed an unduly harsh sentence. We

find no abuse of discretion by the trial court. *State v. Ogata,* 95 Idaho 309, 508 P.2d 141 (1973); *State v. Butler,* 93 Idaho 492, 464 P.2d 931 (1970).

Tucker also appeals from the judgment dismissing his petition for post-conviction relief under I.C. § 19–4901 et seq. A final judgment of conviction has not been entered in this case as the case is being remanded to the trial court. Thus, it would be procedurally inappropriate for this court to review Tucker's appeal from the judgment denying his petition for post-conviction relief at this time. See, *State v. Barwick,* 94 Idaho 139, 483 P.2d 670 (1971). The trial court is directed to dismiss the petition for post-conviction relief without prejudice. See, *Still v. State,* 95 Idaho 766, 519 P.2d 435 (1974).

The case is remanded for further proceedings upon the basis of the appeal from order denying motion for a new trial. The petition for post-conviction relief is remanded to the trial court to dismiss it without prejudice.

McQUADE, C. J., and DONALDSON, SHEPARD and BAKES, JJ., concur.