774 P.2d 900

**STATE of Idaho, Plaintiff–Respondent,**

v.

**James Dave CARMAN, Defendant–Appellant.**

**No. 17903.**

Supreme Court of Idaho.

May 26, 1989.

Alan E. Trimming, Ada County Public Defender, Boise, for defendant-appellant. August H. Cahill, Jr., Chief Deputy Public Defender, argued.

Jim Jones, Atty. Gen., Boise, for plaintiff-respondent. Michael A. Henderson, Deputy Atty. Gen., argued.

BAKES, Chief Justice.

Following a jury trial, defendant James Carman was convicted of forcible rape and sentenced to a 10–year indeterminate term of imprisonment. On appeal, the Idaho Court of Appeals affirmed both the conviction and the sentence. *State v. Carman,* 114 Idaho 791, 760 P.2d 1207 (Ct.App.1988) (*Carman I*). Carman's subsequent petition for this Court's review was granted. We affirm.

On August 13, 1984, Carman was charged with a forcible rape that had occurred the previous day. Carman retained private counsel, Mr. William J. Tway, to represent him. Mr. Tway represented Carman through the early stages of the criminal proceedings, including the preliminary hearing on September 13, 1984. At his district court arraignment on October 9, 1984, Carman again appeared with Mr. Tway, and the trial date was set for March 12, 1985—just short of the 6–month period allowed under I.C. § 19–3501.

On January 8, 1985, Mr. Tway filed a motion seeking leave to withdraw as defense counsel. In his supporting affidavit, Mr. Tway stated three reasons for withdrawing: (1) Carman "has not kept in contact with counsel, and counsel has made numerous attempts to contact said client by phone and mail but has not been able to contact him. As a result of lack of contact, the Law Firm is unable to represent said defendant in this action"; (2) "said client has failed to abide by the agreement to pay for the costs and attorneys fees incurred in the prosecution of this case"; and (3) the "Motion is not made to hinder or delay this cause, and will in no way prejudice or delay the other parties hereto."

Carman again appeared with Mr. Tway before the district court on January 21, 1985. At that time the court entered an order allowing Mr. Tway to withdraw from the case. The defendant then completed an affidavit of indigency and the court appointed the Ada County public defender to represent him. The March 12 trial date was re-confirmed.

On February 25, 1985, the court held a hearing on the public defender's motion to vacate the March 12 trial date. The public defender stated that Carman was willing to waive his right to a speedy trial and that Carman was attempting to retain Mr. Vernon K. Smith as his counsel. The public defender also stated that he would not be prepared to try the case on March 12. The state opposed the motion and the victim's mother testified regarding "the anxiety and the trauma" that her 16–year–old daughter had experienced as a result of the case. She said she didn't think her daughter was "emotionally prepared to deal with this kind of delay," and that her daughter felt "that unless this issue is brought to an end soon, that she threatens to—she cannot guarantee her being able to remain the State's prime witness." The district judge denied the motion for a continuance. However, following the hearing the prosecutor and the public defender apparently agreed to request that the trial date be reset for March 26, an open date on the calendar.

On March 12, 1985—one week short of the 6–month period allowed by I.C. § 19–3501—Carman appeared in court along with Mr. Smith and the public defender. Mr. Smith expressed a willingness to represent Carman, though no formal arrangements had been made, but only on the condition that trial be rescheduled for late April or early May. The State opposed any further continuance of the case. Nevertheless, the prosecutor noted that he had spoken with the victim the previous night and she had indicated that "she would abide by whatever decision the Court made; that she just wants a definite date set for trial." The court declined to reset the trial date beyond March 26, observing that his schedule did not allow him the flexibility to reset the case and that he was "socked in for months" after March 26.

On March 26, 1985, the defense again moved for a continuance of the trial. The public defender took the stand and testified regarding the difficulties he had encountered in trial preparation. He described in detail the great volume of cases and hearings that had occupied his time. He also stated that there were reports, tape recordings, and potential witnesses that he had not been aware of until the preceding few days; these included a tape recording of statements made by the defendant that the public defender had not received until that very morning. The prosecutor, likewise, stated that he had only received the recording from the police earlier that morning and had not listened to it. Neither did he oppose the motion for continuance. The trial judge accepted this showing and, after consulting with the court clerk regarding his calendar, found that the dates of April 9th and May 7th, 1985, were then open. Accordingly, the court granted the motion and reset the trial for May 7. A jury trial, in which Carman was represented by the public defender, was then conducted and the jury found Carman guilty of forcible rape as charged.

■■■ This Court is asked to review whether the trial court erred when it denied Carman's March 12th motion for a continuance so that he could retain counsel of his choice and also whether the trial court abused its discretion in sentencing Carman to a 10–year indeterminate prison term. Those issues were presented to the Court of Appeals in Carman's initial appeal. *State v. Carman*, 114 Idaho 791, 760 P.2d 1207 (Ct.App.1988) (*Carman I*). We conclude that the Court of Appeals correctly decided those issues. Accordingly, for the reasons set out in the opinion of the Court of Appeals in *Carman I*, we affirm.

SHEPARD and JOHNSON, JJ., concur.

JOHNSON, Justice, concurring specially.

I concur in the opinion of Justice Bakes affirming the decision of the trial court. However, I would have preferred to base the decision more narrowly than did the Court of Appeals. In my view, the record here indicates that on March 26, 1985, when the trial was reset to begin on May 7, 1985, Carman had an opportunity to renew his request to substitute counsel of his own choosing and did not do so. This was only two weeks after the trial court had refused

to continue the trial until April or May to accommodate Mr. Smith's calendar. So far as the record here reflects, on March 26 Carmen could have secured the assistance of Mr. Smith or some other attorney of his own choosing. The record reflects that he did not at that time even raise an objection to being represented by the public defender at trial.

The following colloquy took place between the trial court and Carman on March 26:

THE COURT: You do understand, Mr. Carman, you have a right to a speedy and public trial under the Constitution of this state and the Federal Constitution; you understand that right?

MR. CARMAN: Yes, sir, I do.

THE COURT: You are willing to waive it so that this matter can be set for trial on May 7th?

MR. CARMAN: Yes.

. . . .

THE COURT: The trial will be vacated today and reset for May 7th at 9:00. You'll have to be here for the trial at that time, Mr. Carman. And I would caution you to keep in close touch with your counsel as a condition of your release so that he'll be able to have your assistance and contact you if necessary to prepare for trial. You understand?

MR. CARMAN: Yes, Your Honor. I've tried to stay in close contact with him.

There is no indication in this exchange that Mr. Carman was dissatisfied with the representation of the public defender or that he wished to attempt to employ Mr. Smith or some other private attorney to represent him at trial. I would prefer to affirm the trial court's decision on the ground that any objection there might have been to the denial of a continuance on March 12 became moot when a continuance was granted on March 26. However, since a majority of the Court does not share this view, I concur in the opinion of Justice Bakes.

HUNTLEY, Justice, dissenting.

I respectfully dissent because I do not believe that it is necessary to deprive a defendant of his constitutionally granted right to counsel in order to accommodate trial court calendars—both objectives can be accomplished when the system is intelligently and appropriately administered.

When one cuts through the verbiage and recitation of facts which tend to obscure the focal point of this case, the fact is that Carman was granted by the court an opportunity to seek a private attorney. That private attorney met with him before the court on March 12th, 1985, expressing a willingness to assume the defense of the case if the court, rather than requiring him to go to trial just a short fourteen days later, on March 26, would allow a resetting of the trial until late April or early May in order to give him opportunity to prepare.

The request was reasonable on its face and the denial of that time for preparation was an abuse of discretion on its face.

The excuse is offered that the trial court's calendar was "socked in for months" but the fact is that we have many judges in Idaho who do not have full calendars at any given time and a simple call to the Administrative Office of the Courts would have made available another judge and another courtroom at any reasonably convenient time.

As the record establishes, even the public defender was not prepared and ultimately he was granted a vacation of the trial date and time to get prepared.

The Court of Appeals opinion which we are reviewing contains the following statement:

The public defender reportedly did not become fully involved in the case until the private counsel issue was settled on March 12. Moreover, the public defender was burdened with a heavy load of other criminal trials involving serious offenses at about the same time. Further, the public defender had only recently received copies of reports in Carman's case, made by several witnesses for the prosecution, and consequently had insufficient time to review these reports.

Is one to suppose that only public defenders and not private attorneys have heavy

work schedules and difficulty taking over a case with only fourteen days' preparation time?

This case is another example of the effect that public pressures are exerting upon Idaho's trial and appellate judges to rush to trial and conviction due to an ever increasing rate of crime in this country regardless of the damage to constitutional principles.

Trial and appellate judges should be mindful of the fact that while we have a duty to expedite all trials, that the most fundamental safeguard of our democratic way of life under our federal and Idaho constitutions is the honoring and implementation of the Bill of Rights. Each time a trial or appellate court permits those rights to be eroded for the sake of expediency, our form of government is nudged toward that which exists in totalitarian states. Would that Idaho's trial and appellate courts would take a broader view of their responsibility to support and defend our constitutions.

BISTLINE, Justice, dissenting.

The Court of Appeals in this case stated that:

> The right to counsel is guaranteed by the sixth amendment to the United States Constitution and by article one, section 13 of the Idaho Constitution. This right is not absolute. It does not necessarily include the right to counsel of one's own choosing. *State v. Clayton*, 100 Idaho 896, 606 P.2d 1000 (1980).

*State v. Carman*, 114 Idaho 791, 760 P.2d 1207 (1988). *Clayton*, if closely read, makes it clear that in that case defendant did not want to go to trial with the attorney whom the magistrate had appointed at the initial arraignment, and who had represented him at the preliminary hearing and in district court appearances short of trial. That defendant provided the district court with no basis for making a substitution of counsel, and so the defendant elected to proceed *pro se*. However, the trial court requested appointed counsel's presence at the trial with instructions to provide the defendant with any desired assistance.

A logical surmise is that the Court of Appeals meant to say of the *Clayton* case that once an accused indigent requests an attorney, the accused does not have the constitutional right to refuse the services of attorney "X" in the public defender's office and instead select from that office "Y" or "Z," or, in counties where there is not a public defender, the indigent defendant has no right to select any attorney of his choice. A better statement of the applicable law comes from *State v. Wozniak*, 94 Idaho 312, 320, 486 P.2d 1025 (1971), namely that,

> [A]n indigent defendant is not entitled to choose which attorney will be appointed to represent him unless extraordinary circumstances exist.

The instant case differs substantially from *Clayton* and from *Wozniak*. Carman sought to be represented by a private attorney, not a public defender, and not a different public defender. Furthermore, as will be noted from the Court of Appeals opinion, the basis of its *ratio decidendi* was safeguarding judicial economy, *i.e.*, accept the trial court's desire to keep things moving by forcing the public defender to go ahead with the defense, notwithstanding that a privately retained attorney was available to represent Carman, which could have saved the county money either directly or indirectly. However, the Court of Appeals although not at fault for having concern for judicial economy should have had equal regard for *fiscal* economy—a subject with which all county commissioners have extreme concern.

Not only was the county shorted financially by not allowing substitution, but no sound reason appears for not allowing Carman's privately retained counsel to take over the defense—assuredly resulting in a deprivation of the right of counsel of one's own choice. Thus, this appeal presents a question of constitutional dimension which appears to have been inadequately resolved by the Court of Appeals.

As will be noted in the Court of Appeals opinion, the attorney whom the defendant wanted to retain and substitute for the public defender advised the district court of

his willingness to come into the case, but conditioned it on the caution that he needed a short continuance in order to prepare. There was then in place a trial date of March 26, and there was also then in place a motion filed by the public defender on March 12, to postpone, based on his need for more time to prepare. Additionally, as that opinion notes the motion to postpone was denied, substitution of counsel was denied and Carman was obliged to continue his defense with the services of the public defender. Interestingly, on the date of trial, March 26, the court did grant a postponement of trial until May 7.

The philosophy of the Court of Appeals opinion boils down to weighing the constitutional right of a defendant to be represented by counsel of his own choice versus "the judicial objective of effective court management," which in this instance turned out to be not all that effective, and certainly not that important—but it was management.

The Ada County Public Defender in the brief supporting the petition for review puts forth a compelling argument that Carman's constitutional rights were violated by the refusal to allow substitution of counsel and grant a continuance. Unable to improve on the argument there advanced, that portion of the public defender's brief is attached as Appendix A. Every point stated therein and the applicability of the authorities finds me in complete accord. It would be presumptuous to rewrite that brief as though it originated with me.

### ADDENDUM

Since expressing my views on this narrow issue presented, Justice Huntley's views have been made known. My views were formulated without having the benefit of that opinion, and I am in accord with all that he has written, other than that I am not persuaded that "a call to the Ad-

ministrative Office of the Courts would have made available another judge and another courtroom at any reasonably convenient time."[1] What I hear from some informed persons suggests rather persuasively that in situations such as were presented here the district judge in all likelihood was under "time standard constraints" imposed upon all district judges by the administrative director.

Also now before me is the specially concurring opinion of Justice Johnson. Differing in some respects from the views of Justice Bakes, Justice Johnson perceives that there was a duty on Mr. Carman to "raise an objection to being represented by the public defender at trial." This view is expressed without any citation of authority, and I do not presently understand the rationale behind the statement. To the contrary, where an accused has found an attorney of his choice to represent him, and a motion is made for substitution of the privately retained counsel in the stead and place of the public defender, it simply does not occur to me that *some* objection on *some* grounds to being confined to the services of public defender must be raised. And, if so, to whom and how? The public defender himself made the motion. He was then representing the defendant, and in the courtroom was the person authorized to speak for the defendant; and he did so. The defendant would have been ruled out of order had he been so foolish as to attempt to supplant the public defender, and for himself argue anything to the judge.

Frankly, I am equally at a loss to understand the purpose of reporting the colloquy between the Court and Mr. Carman which is set out in Justice Johnson's opinion. That colloquy was initiated by the court; he was addressing Mr. Carman directly regarding one specific point, *i.e.*, that obtaining a continuance per his counsel's request amounted to a waiver of his right to a speedy trial. The judge was entirely correct in so addressing the defendant in order

---

1. I would be inclined to that view if Justice Huntley were the officer in charge of administration, but he is not. Instead that office is under the domination and direction of an administrative director. Most information com- ing to me is that the director is wholly in charge. I cannot remember any meetings of the Court in recent years where the agenda included the making of decisions as to supervising and guiding the director.

to become assured that the *defendant himself* was aware of the implications of obtaining the continuance. This is of interest, and shows the judge's proper concern for the rights of the defendant. Because the right of speedy trial is peculiar to the accused, not his attorney, hence the court properly addressed the defendant himself. Moreover, I do not see that the right to a speedy trial is an issue before us, or that it was an issue which the Court of Appeals was required to address.

Justice Johnson in turn is entirely correct in asserting that in the colloquy Mr. Carman gave no indication that he was dissatisfied with the public defender or that he wanted Mr. Smith as his attorney. As mentioned above, a motion to that effect had been earlier presented to the district court, with Mr. Smith also present, but the motion was denied. The choices of a prudent defendant in such circumstances are two fold, namely to acquiesce or to acquiesce. Justice Bakes writing for the majority recognized just such an acquiescence in a similar case involving the right to counsel, *State v. Brown* 98 Idaho 209, 560 P.2d 880 (1977):

> The record does disclose that before trial Brown had been displeased with his court appointed counsel but had been unable to retain other counsel. After trial he asked to have his appointed counsel discharged and to retain other counsel. *Under these circumstances he should have been granted a reasonable continuance to allow for new counsel to be retained* and to be present at the sentencing hearing.

Counsel for Carman included that citation in his brief. The majority opinion strangely gives it no consideration.

In all of my experience I have never seen, nor have I heard of, a circumstance where an apparently rational, albeit criminally accused, defendant on being asked to answer specific questions put to him by the court, has been so foolish and meddlesome as to assume the part of supplanting his attorney in an attempt to bicker with the court on a ruling which has been made. Moreover, where the constitutional right to

retained counsel of one's own choice is involved, I do not comprehend that one must convince the trial judge of one's dissatisfaction with the public defender, or with other court-appointed counsel, as was the circumstance in *State v. Brown*, 98 Idaho 209, 560 P.2d 880 (1977).

The trial bar may well wonder when there is applicable case-precedent, and diligent counsel have cited to it, why it goes unmentioned in the opinion for the Court.

## APPENDIX A

### IV. ARGUMENT

A. Whether the trial court's failure to grant the defendant's request for a continuance so he could retain counsel of his own choice constituted reversible error

It is the defendant's contention that he was denied his Sixth Amendment right to counsel when the trial court refused to grant a continuance so defendant could be represented by retained counsel of his own choosing. Although, the defendant acknowledges that the general rule that the decision to grant or to deny a continuance rests within the judge's sound discretion, *State v. Ward,* 98 Idaho 571, 569 P.2d 916 (1977), it must be pointed out that our Supreme Court has ruled that such discretion is abused if denying a continuance results in an abridgement of an accused's right to counsel. *State v. Brown* 98 Idaho 209, 560 P.2d 880 (1977).

In the *Brown* case, *supra*, the court noted that "a defendant may not indefinitely postpone trial or sentencing by continually changing counsel or arriving for hearings unrepresented by counsel" 98 Idaho at 212, 560 P.2d at 883. But, absent a showing of such circumstances the court in *Brown, supra,* held that a defendant is entitled to a reasonable continuance for the purpose of obtaining counsel.

In this case there was no showing that the defendant sought to change attorneys to postpone the proceeding, but rather his first attorney withdrew and he was merely trying to get an attorney of his own choosing and at his own expense (Supplemental

Transcript: p. 2, line 18, p. 3, line 3; p. 17, line 10, p. 18, line 22; p. 22, lines 18–21; p. 29, lines 2–12;).

A case very similar to the instant case is the California case of *People v. Courts,* 37 Cal.3d 784, 210 Cal.Rptr. 193, 693 P.2d 778 (1985).

The California Supreme Court stated that there were several well established principles to guide its determination, whether the trial court's failure to grant a continuance constituted an abuse of discretion and then went on to set forth the following principles, to-wit:

█ The right to the effective assistance of counsel "encompasses the right to retain counsel of one's own choosing. [Citations.]" (*People v. Holland* (1978) 23 Cal.3d 77, 86, 151 Cal.Rptr. 625, 588 P.2d 765.) Underlying this right is the premise that "chosen representation is the preferred representation. Defendant's confidence in his lawyer is vital to his defense. His right to decide for himself who best can conduct the case must be respected wherever feasible." (*Maxwell v. Superior Court* (1982), 30 Cal.3d 606, 615, fn. omitted, 180 Cal.Rptr. 177, 639 P.2d 248.)

Protection of this right furthers other values important to our criminal justice system. The right to employ counsel of one's own choosing "is based on a value additional to that insuring reliability of the guilt-determining process. Here we are concerned not only with the state's duty to insure 'fairness' in the trial but also with the state's duty to refrain from unreasonable interference with the individual's desire to defend himself in whatever manner he deems best, using every legitimate resource at his command." (*People v. Crovedi* (1966) 65 Cal.2d 199, 206, 53 Cal.Rptr. 284, 417 P.2d 868.)

█ Both this court and the United States Supreme Court have emphasized that trial courts have the responsibility to protect a financially able individual's right to appear and defend with counsel of his own choosing. "A necessary corollary (of the right) is that a defendant must be given a reasonable opportunity to employ and consult with counsel, oth-

erwise, the right to be heard by counsel would be of little worth. ([Citations.])" (*Chandler v. Fretag* (1954) 348 U.S. 3, 10 75 S.Ct. 1, 5, 99 L.Ed. 4; *People v. Holland,* supra, 23 Cal.3d at p. 87, fn. 10, 151 Cal.Rptr. 625, 588 P.2d 765.) In addition, counsel, "once retained, [must be] given a reasonable time in which to prepare the defense." (*People v. Haskett* (1982) 30 Cal.3d 841, 852, 180 Cal.Rptr. 640, 640 P.2d 776.) Failure to respect these rights constitutes a denial of due process. (*Chandler v. Fretag,* supra, 348 U.S. at p. 10, 75 S.Ct. at p. 5; *People v. Byoune* (1966) 65 Cal.2d 345, 348, 54 Cal.Rptr. 749, 420 P.2d 221). 693 P.2d at 78–781.

The California Supreme Court then went on to set forth the following principles balancing the defendant's request for a continuance against the description of the orderly process of justice.

Any limitations on the right to counsel of one's choosing are carefully circumscribed. Thus, the right "can constitutionally be forced to yield only when it will result in significant prejudice to the defendant himself or in a disruption of the orderly processes of justice unreasonable under the circumstances of the particular case." (*People v. Crovedi,* supra, 65 Cal.2 at p. 208, 53 Cal.Rptr. 284, 417 P.2d 868, italics added: *Maxwell v. Superior Court, supra,* 30 Cal.3d at pp. 613–614, 180 Cal.Rptr. 177, 639 P.2d 248.) The right to such counsel "must be carefully weighed against other values of substantial importance, such as that seeking to ensure orderly and expeditious judicial administration, with a view toward an accommodation reasonable under the facts of the particular case." (*People v. Byoune,* supra, 65 Cal.2d at p. 346, 54 Cal.Rptr. 749, 420 P.2d 221.)

However, "a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defendant with counsel an empty formality." (*Ungar v. Sarafite,* supra [1964] 376 U.S. [575] at p. 589, 84 S.Ct. [841] at p. 849 [11 L.Ed.2d 921].) For this reason, trial courts should accommodate such requests—when they

are linked to an assertion of the right to retained counsel—"to the fullest extent consistent with effective judicial administration." (*People v. Crovedi*, supra, 65 Cal.2d at p. 209, 53 Cal.Rptr. 284, 417 P.2d 868.)

In deciding whether the denial of a continuance was so arbitrary as to violate due process, the reviewing court looks to the circumstances of each case. " 'particularly in the reasons presented to the trial judge at the time the request [was] denied.' " (*Id.*, at p. 207, 53 Cal. Rptr. 284, 417 P.2d 868, quoting *Ungar v. Sarafite*, supra, 376 U.S. at p. 589, 84 S.Ct. at p. 850. .... 693 P.2d at 781.)

An accused's timely assertion of his right to retained counsel may in some instances cause some disruption in a trial court's calendar. However, the frequency of such occurrences should not be overstated, for the number of indigents who become financially able to retain private counsel before trial is relatively small. Crovedi's requirement that trial courts exercise "resourceful diligence" in protecting the right to chosen counsel (65 Cal.2d at p. 209, 53 Cal.Rptr. 284, 417 P.2d 868) must be respected, even when a byproduct of a concrete and timely assertion of that right is some disruption in the process.[10] 693 P.2d at 785.

After analyzing all of the relevant factors the court in *Courts, supra,* determined that:

Appellant was diligent in his efforts (1) to secure counsel of his own choosing before the date of trial, and (2) to apprise the court of his wishes at the earliest possible time. The trial court's failure to respect appellant's right to chosen counsel and to grant the requested continuance constituted error.

Deprivation of appellant's right to counsel of his choice "requires reversal regardless of whether in fact he had a fair trial." (*People v. Gzikowski*, supra, 32 Cal.3d at p. 589, 186 Cal.Rptr. 339, 651 P.2d 1145; accord *Reynolds v. Cochran* (1961) 365 U.S. 525, 531, 81 S.Ct. 723, 726, 5 L.Ed.2d 754; *People v. Byoune*, supra, 65 Cal.2d at p. 346, 54 Cal.Rptr. 749, 420 P.2d 221; *People v. Crovedi*, supra 65 Cal.2d at p. 205, 53 Cal.Rptr. 284, 417 P.2d 969.)" 693 P.2d at 785.

Based upon the facts of the instant case and the applicable law it was apparent that the trial court's failure to grant the defendant's request for a continuance so he could obtain private counsel constituted a violation of defendant's Sixth Amendment rights. This is especially true in light of the fact that defendant's private attorney indicated his willingness to proceed if a continuance were obtained and the lack of any evidence of an attempt by defendant to delay the proceeding or a showing of significant inconvenience to the court or the parties.

This case involves a policy issue relating to just how far the district court should go in restricting a defendant's choice of attorney under the guise of judicial economy and orderly administration of the courts. Here the defendant actually had funds to hire a private attorney and so technically was not indigent, as is the usual case with appointed counsel. Obviously, the public defender could have moved to be released from the case, but it is likely such a request would have been denied, given the court's statements concerning the request for a continuance. Further, this may have operated to deprive the defendant of any representation at all, a situation which no ethical lawyer would wish to create.

A motion to withdraw would also have a detrimental effect upon any future attorney-client relations as the client would have doubts about his attorney's zeal in representing him. Thus, appointed counsel's only realistic option to facilitate the client's desire to hire a private attorney was to move to continue.

A further consequence of the Court of Appeal's decision in this case is that district court judges may use the decision to grant or deny a motion to withdraw by an attorney to force defendants to accept attorneys as dictated by the court. This would happen where an attorney who had problems with a particular defendant would not be able to withdraw because the court refused to allow a continuance to get a new lawyer

on line. This will have a "chilling" effect upon the free choice of representation by attorneys and clients.

Also a lawyer may be able to "force" compliance by a client by threatening to withdraw, leaving the client with representation by a public defender, who may not refuse an appointment. This situation works an injustice upon the client, the appointed attorney and ultimately each attorney who practices law in the state.

## CONCLUSION

The failure of the Court of Appeals to reverse this case constitutes manifest injustice and the case should be reviewed by the Idaho Supreme Court.

Respectfully submitted this 13th day of October, 1988.

/s/August H. Cahill
AUGUST H. CAHILL
Attorney for Appellant