**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**
**Docket No. 42525**

| STATE OF IDAHO, | ) | 2015 Opinion No. 66 |
| | ) | |
| Plaintiff-Appellant, | ) | Filed: October 20, 2015 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| JOSEPH R. ROCKSTAHL, | ) | |
| | ) | |
| Defendant-Respondent. | ) | |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. Jonathan P. Brody, District Judge; Hon. Mick Hodges, Magistrate.

Decision of the district court, on intermediate appeal from the magistrate, affirmed.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for appellant. Kenneth K. Jorgensen argued.

Keith R. Roark, Hailey, for respondent. Keith R. Roark argued.

_____

GUTIERREZ, Judge

Joseph R. Rockstahl was found guilty of exhibiting a deadly weapon and disturbing the peace. On intermediate appellate review, the district court determined that Rockstahl's right to counsel of choice was denied and it was error to exclude his intended trial character witnesses. Accordingly, the district court vacated the judgment of conviction and remanded the case for a new trial. The State appeals, arguing that the district court erred in finding an abuse of discretion for excluding Rockstahl's character witnesses and in finding that Rockstahl was denied his right to counsel of choice. For the reasons that follow, we affirm the district court's decision.

## I.

## FACTS AND PROCEDURE

Surrounding an incident that occurred on July 2, 2012, the State charged Rockstahl on November 23, 2012, with three misdemeanors: exhibiting a deadly weapon, aiming a firearm at

others, and disturbing the peace. After Rockstahl initially appeared on his own behalf,[1] an attorney (the trial attorney) substituted in to represent Rockstahl on November 28, 2012. On March 21, 2013, the magistrate set the jury trial for May 30 and 31, 2013, with a pretrial conference to take place on May 17, 2013.

According to a later-filed affidavit, the attorney-client relationship between Rockstahl and the trial attorney experienced a total breakdown. One week after the pretrial order setting the trial date, on March 28, 2013, Rockstahl fired the trial attorney. The affidavit also explained that Rockstahl indicated he was hiring another attorney (the substitute attorney) to represent him. The record does not indicate why the trial attorney did not immediately file a motion to withdraw, and the substitute attorney did not file a notice of appearance. On May 15, 2013, a month and a half after Rockstahl fired the trial attorney and two days prior to the pretrial conference, the trial attorney filed an ex parte motion to withdraw.

Rockstahl, his trial attorney, his substitute attorney, the prosecutor, and the magistrate judge participated in the pretrial conference on May 17, 2013. During the conference, the magistrate asked the trial attorney why he waited two months to file a motion to withdraw. The trial attorney explained that Rockstahl told him to discontinue working on the case and that the substitute attorney would appear on Rockstahl's behalf. The magistrate then turned to the prosecutor, and the prosecutor said that he had no position on the request to withdraw. The magistrate returned to the trial attorney and asked about speedy trial, which Rockstahl did not originally waive. The trial attorney informed the court that Rockstahl would waive speedy trial if the court was willing to continue the trial. The substitute attorney interjected and informed the magistrate that he was "ready, willing, and able to do what anyone wants to be done." The discussion then turned to the available dates for the substitute attorney and for the court, which were two days in the beginning of August 2013. The prosecutor responded, "this is like a misdemeanor case more than a year old, by the time, August would be a year and a month."

After further discussion about the trial dates, the magistrate expressed his concern with the situation: "I don't like this a bit, I'm sorry. I don't--again, we could have had this taken care of two months ago and set the date earlier. This is a denial of justice. What about our victims? They're entitled to better than this." The magistrate then denied the motion seeking withdrawal of the trial attorney, explaining that he was "going to order you two [Rockstahl and his trial

---

[1] Rockstahl is an Idaho licensed attorney.

2

attorney] to work together." He further noted, "I'm very sorry, but it's just--I agree, a misdemeanor a year old gives me the impression we want to avoid trial. I agree a defendant's rights are important, but under these circumstances, that will be my order." After denying the motion, the magistrate asked for jury instructions and witness lists in a week. Trial counsel then raised a scheduling conflict of his own and also moved the court to dismiss the case because speedy trial would run prior to the scheduled trial date. In response, the magistrate moved the trial up. Rockstahl submitted his intended witness and exhibit list on May 20, 2013.

On May 22, 2013, one day before trial, the magistrate conducted a pretrial hearing and addressed Rockstahl's witness list. The prosecutor objected to the listed witnesses, noting that Rockstahl failed to respond to a discovery request on November 29, 2012. Based upon Rockstahl's failure to disclose witnesses in response to the prosecutor's discovery request, the magistrate decided that none of the listed witnesses, except for Rockstahl and his wife, could testify. The case proceeded to trial, and a jury found Rockstahl guilty of exhibiting a deadly weapon, I.C. § 18-3303, and disturbing the peace, I.C. § 18-6409. Following the verdict, Rockstahl substituted in for the trial attorney and the substitute attorney later substituted in for Rockstahl. The magistrate eventually sentenced Rockstahl to consecutive sentences, in addition to fifty hours of community service: 180 days with 174 days suspended for exhibiting a deadly weapon and 180 days with 176 days suspended for disturbing the peace.[2]

Rockstahl filed an appeal with the district court. Rockstahl contended in his appellate brief that his right to counsel of choice was denied and that the magistrate erred by excluding character witnesses. The district court determined that Rockstahl's right to counsel of choice was denied and also found that the magistrate abused its discretion by excluding the witnesses. The district court thus vacated the judgment of conviction and remanded the case for a new trial. The State appeals.

## II.

## ANALYSIS

On appeal, the State argues that the district court erred in determining that the magistrate denied Rockstahl his right to counsel of choice and in determining that the magistrate abused its discretion by excluding Rockstahl's character witnesses.

---

[2]     Rockstahl was also placed on twenty-four months of supervised probation.

When reviewing the decision of a district court sitting in its appellate capacity, our standard of review is the same as expressed by the Idaho Supreme Court. "When reviewing the decision of the district court acting in its appellate capacity, this Court directly reviews the district court's decision." *State v. Loomis*, 146 Idaho 700, 702, 201 P.3d 1277, 1279 (2009). Thus, we do not review the decision of the magistrate. *State v. Trusdall*, 155 Idaho 965, 968, 318 P.3d 955, 958 (Ct. App. 2014). Rather, we are procedurally bound to affirm or reverse the decision of the district court. *Id.*

At issue in this appeal is the Sixth Amendment right to counsel of choice. The Sixth Amendment provides a defendant "who does not require appointed counsel to choose who will represent him." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006). A "[d]eprivation of the right is 'complete' when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received." *Id.* at 148. Thus, the erroneous denial of the right to counsel of choice is a structural error, and a court need not assess whether counsel was ineffective or whether the defendant was prejudiced by the error. *Id.* The right to counsel of choice is qualified, however. Indeed, the United States Supreme Court has "recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness, [*Wheat v. United States*, 486 U.S. 153, 163-64 (1988)], and against the demands of its calendar, *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983)." *Gonzalez-Lopez*, 548 U.S. at 152; *see also State v. Carman*, 114 Idaho 791, 793, 760 P.2d 1207, 1209 (Ct. App. 1988).

In this case, the district court ultimately determined that denial of the motion to withdraw, the denial of a continuance, and the magistrate's order that trial counsel and Rockstahl work together denied Rockstahl his right to counsel of choice. Although recognizing that the motion to withdraw should have been filed earlier, the district court considered several factors in reaching its determination. On appeal, the State focuses specifically on the denial of the continuance by the magistrate, explaining that the district court did not apply the correct standard. We understand the State's argument to also tie into the larger picture: whether Rockstahl's right to counsel of choice was appropriately limited because the trial court balanced the right to counsel of choice against the demands of the trial court's calendar.

Both the majority and dissenting opinions in *Gonzalez-Lopez* recognized that a trial court may balance the right to counsel of choice against the demands of the trial court's calendar. *Gonzalez-Lopez*, 548 U.S. at 152 (majority) ("We have recognized a trial court's wide latitude in

4

balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar") (internal citations omitted); *id.* at 155 (Alito, J., dissenting) ("Similarly, the right to be represented by counsel of choice can be limited by mundane case-management considerations."). Both opinions also cited to *Morris*, in which the United States Supreme Court considered whether the trial court violated the Sixth Amendment right to counsel when it denied defense counsel's motion for more time to prepare. *Morris*, 461 U.S. at 11. The Court explained that "broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel.'" *Id.* at 11-12 (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)).

Relying on *Morris*, this Court explained that "an accused's right to counsel does not wholly displace the judicial objective of effective court management." *Carman*, 114 Idaho at 793, 760 P.2d at 1209. But we have also explained that when a trial court considers a request that new counsel substitute in for withdrawing counsel and a request that a continuance be allowed, the trial court should examine the requests "with the rights and interests of the defendant in mind, tempered by exigencies of judicial economy." *Id.* Although the trial court judge has discretion to grant or deny a continuance, such discretion is abused "if denying a continuance results in abridgement of [a defendant's] right to counsel." *In re Interest of Kinley*, 108 Idaho 862, 865, 702 P.2d 900, 903 (Ct. App. 1985). This Court and the Idaho Supreme Court have thus recognized that "when a defendant requests new counsel, several factors have been identified for use in making the determination of whether his request for a continuance should be granted." *State v. Pratt*, 125 Idaho 546, 555, 873 P.2d 800, 809 (1993); *Carman*, 114 Idaho at 793, 760 P.2d at 1209. These factors are:

> the timing of the motion; the requested length of delay, including whether the delay is an attempt to manipulate the proceedings; the number, if any, of similar continuances sought by the defendant; inconvenience to witnesses; any prejudice to the prosecution; whether an irreconcilable conflict exists between the accused and counsel; and the qualifications possessed by present counsel.

*Carman*, 114 Idaho at 793, 760 P.2d at 1209. Other courts utilize similar factors or examine the circumstances of the ruling and the trial court's rationale. *E.g.*, *United States v. Trestyn*, 646 F.3d 732, 739 (10th Cir. 2011) (analyzing eight factors), *People v. Brown*, 322 P.3d 214, 221 (Colo. 2014) (adopting an eleven-factor test); *see also United States v. Sellers*, 645 F.3d 830, 835

(7th Cir. 2011) (explaining that the court considers "both the circumstances of the ruling and the reasons given by the judge").

Because the decision to grant a continuance is within the discretion of the trial court, we review the decision on the continuance alone for an abuse of discretion. *Carman*, 114 Idaho at 793, 760 P.2d at 1209; *see also United States v. Maldonado*, 708 F.3d 38, 42 (1st Cir. 2013). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989). Importantly, we consider whether the trial court balanced the right to counsel of choice against the demands of the trial court's calendar or whether it acted arbitrarily. But the larger issue of whether a defendant's right to counsel of choice was denied (which encompasses the motion for a continuance in this case) is a constitutional issue; thus, we exercise free review over that issue. *State v. Abdullah*, 158 Idaho 386, 418, 348 P.3d 1, 32 (2015) ("Constitutional issues are pure questions of law over which this Court exercises free review."); *State v. Kilby*, 130 Idaho 747, 749, 947 P.2d 420, 422 (Ct. App. 1997) (holding "we freely review the application of constitutional principles to the facts as found").

Here, the magistrate said, "I don't like this a bit, I'm sorry. I don't--again, we could have had this taken care of two months ago and set the date earlier. This is a denial of justice. What about our victims? They're entitled to better than this." Notably absent here is any inquiry into the breakdown in communication between Rockstahl and his trial attorney. Then, without analyzing the *Carman* factors or addressing his court calendar,[3] the magistrate denied the motion to withdraw (and the inherent motion to continue and substitute the other attorney) and "order[ed] you two [trial counsel and Rockstahl] to work together." Applying the *Carman* factors leads to a different result.

---

[3]  This case uniquely involves the Sixth Amendment right to counsel in that the magistrate balanced the right to counsel of choice against the rights of the victims. And while the magistrate noted the overall length of the pendency of the case, it made no mention of adverse effect on the court's docket.

Turning to the first *Carman* factor--the timing of the motion--the motion to withdraw here was filed only two days before the pretrial conference. However, the motion was still filed two weeks prior to the scheduled trial. Next, regarding the requested length of delay, the substitute attorney requested a delay of two months from the scheduled trial date, and this appeared reasonable considering the substitute attorney's trial calendar. There is no indication that the substitute attorney attempted to manipulate the proceedings. Moreover, the crimes were charged only five and a half months prior to the May 22, 2013, pretrial hearing, and Rockstahl acknowledged that he would waive speedy trial. Also, the State did not charge Rockstahl with the crimes until four and a half months after the date of the alleged incident. As to the third factor--whether there were other similar continuances sought by the defendant--there was no discussion during the pretrial hearing of any other continuance or motion for extension of time. The next factor deals with inconvenience to witnesses, but there was no discussion of inconvenience to the State's witnesses during the pretrial hearing (although it appears there was an inconvenience for some of Rockstahl's witnesses by not continuing the trial). Turning to whether there was prejudice to the prosecution, the record is void of such evidence. Perhaps the most important factor here is whether an irreconcilable conflict exists between the accused and counsel. There indeed was an irreconcilable conflict between Rockstahl's trial attorney and Rockstahl: Rockstahl fired the trial attorney two months before the pretrial hearing due to a breakdown in communication. Finally, the last factor analyzes the qualifications possessed by present counsel. As the district court discussed, substitute counsel had the requisite qualifications to appear on Rockstahl's behalf and was ready and willing to represent Rockstahl.

The district court considered several of these factors in reaching its decision that the magistrate abused its discretion by not granting the continuance.[4] This Court agrees with the district court's decision. The issue then becomes how the error in refusing to grant a continuance implicates Rockstahl's right to counsel of choice.

---

[4] Specifically, the district court considered: the qualifications possessed by counsel ("current counsel is a very skilled defense attorney who has done countless jury trials"); the absence of other continuances; the fact that the "requested delay was not an attempt to manipulate the proceedings" and was "not unreasonable"; the timing of the motion ("[t]he motion should have been filed earlier, but was still filed before the pretrial"); and whether an irreconcilable conflict existed between the defendant and counsel ("being discharged is a breakdown in the relationship").

Looking at the totality of the denial of the motion to withdraw, motion to continue (in order to substitute counsel), and the magistrate's order that trial counsel and Rockstahl work together, this Court concludes that Rockstahl's right to counsel of choice was violated. Rockstahl was forced to proceed through a trial with an attorney he had fired two months before; this was a structural error that requires us to vacate the convictions for exhibiting a deadly weapon and disturbing the peace. *Gonzalez-Lopez*, 548 U.S. at 150 ("We have little trouble concluding that erroneous deprivation of the right to counsel of choice, with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as structural error.") (internal quotations omitted). We recognize the importance of promoting judicial efficiency by avoiding delays, but judicial efficiency must be balanced against Rockstahl's constitutional right to counsel of choice. Because we affirm the district court's decision, we need not address the exclusion of the character witnesses, as the witnesses that will be called by each party will have to be readdressed in the pretrial proceedings.

Judge GRATTON and Judge HUSKEY **CONCUR**.