**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 51254**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: August 29, 2025** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| GENE L. GRAY, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bingham County. Hon. Darren B. Simpson, District Judge.

Judgment of conviction, <u>affirmed</u>; order denying motion to substitute counsel, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Brian R. Dickson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Judge

Gene L. Gray appeals from the judgment of conviction entered in his case, arguing the district court abused its discretion in denying his motion to substitute counsel. The State argues there was no error. Gray's judgment of conviction and the district court's order denying Gray's request for new counsel are affirmed.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Law enforcement executed a search warrant on Gray's home. Based on what was found during the search, Gray was charged with possession of a controlled substance with the intent to deliver, Idaho Code § 37-2732(a)(1), misdemeanor possession of a controlled substance, I.C. § 37-2732(c)(3), and possession of drug paraphernalia, I.C. § 37-2734A(1). Approximately one week before trial, defense counsel filed a witness list; potential witnesses listed were Gray and, "Any

1

witnesses disclosed in State's Discovery Responses." In response, the State filed two motions in limine. The first motion sought to exclude the presentation of any evidence regarding the confidential informant and the controlled drug buys upon which, in part, the search warrant was based. The second motion in limine sought to limit the defense to calling only Gray or witnesses called by the State on the basis that Gray's witness list was too vague to provide sufficient notice to the State as to which witnesses the defense intended to call.

The morning of trial, a hearing was held on the motions. It became clear at the hearing that Gray wanted to call the confidential informant, which the State opposed. The district court ruled that any testimony from the confidential informant was only relevant to challenging the basis for the search warrant, which Gray had not done. Consequently, the district court granted the State's first motion in limine. As to the second motion in limine, Gray argued he could not have provided a more specific name for the confidential informant on his witness list because the State had not disclosed the name. The district court ruled that the confidential informant had no relevant testimony because the evidence was discovered during the execution of a search warrant, not as a result of the prior controlled drug buys involving the confidential informant. The district court held that the defense could not call the confidential informant and, additionally, that neither party could call witnesses that had not been disclosed.

Gray then told the district court he wanted new counsel. Gray explained that he felt it was unfair that the search warrant had been issued and that the district court had held that it was too late to challenge the issuance of the warrant. The district court ruled that the time for challenging the search warrant had passed and even if Gray had new counsel, the rulings were unlikely to change. Gray expressed frustration that he would likely get convicted if he could not challenge the search warrant and the district court instructed Gray to discuss that matter with defense counsel. Gray said he wanted new counsel, and when the district court said Gray could go forward with his current counsel or represent himself, Gray proceeded to trial with defense counsel. The jury found Gray guilty of all charges. Gray appeals.

## II.

## STANDARD OF REVIEW

The decision of whether to appoint substitute counsel lies within the discretion of the trial court and will only be reviewed for an abuse of discretion. *State v. Lippert*, 152 Idaho 884, 887, 276 P.3d 756, 759 (Ct. App. 2012).

2

When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

## III.

## ANALYSIS

Gray characterizes his motion to substitute counsel as a motion to continue the trial and based on that characterization, argues that the district court erred in failing to consider the factors relevant to granting or denying a continuance. However, Gray's argument rests on the erroneous factual premise that Gray moved for a continuance. This erroneous factual premise occurs throughout the appellant's brief, beginning with the issue statement and the initial heading in the argument section. It is phrased as, "The District Court Erred By Denying Mr. Gray's Motion For Continuance To Seek New Counsel . . . ." This implies that Gray moved for a continuance so that he could obtain new counsel. No such motion was made. Then, the first sentence of Gray's standard of review reads, "When a defendant requests new counsel on the morning of trial, that is, in effect, a request to continue the trial. *See State v. DeWitt*, 153 Idaho 658, 662, 289 P.3d 60, 64 (Ct. App. 2012)." *DeWitt* does not support the proposition Gray argues.

In *DeWitt*, on the morning of trial, DeWitt requested new counsel and specifically identified his concern with defense counsel. *Id*. at 660, 289 P.3d at 62. Defense counsel then stated, "I guess on his behalf, I really--I feel obligated to ask this Court to continue the trial at this point and give him the opportunity to obtain alternate counsel that he feels comfortable with." *Id*. The district court denied the request and DeWitt appealed. On appeal, DeWitt argued that his right to counsel under the Sixth Amendment to the United States Constitution was violated when the district court denied his request to obtain alternate counsel without providing DeWitt a full and fair opportunity to explain the conflict he had with counsel. *DeWitt*, 153 Idaho at 660, 289 P.3d at 62. The State argued that, while DeWitt characterized his request made on the morning of trial as one to substitute counsel, the request was really a motion for a continuance in order to obtain alternate counsel. *Id*. at 662, 289 P.3d at 64. The State did so in an attempt to argue that because DeWitt had not requested new counsel, the district court did not err when it did not provide DeWitt the opportunity to show good cause, i.e., explain the conflict with his attorney. *Id*. Thus, the issue

3

in *DeWitt* was not related to the motion to continue the trial, but instead, whether the district court inquired and provided DeWitt a full and fair opportunity to show good cause to support his request for alternate counsel. *Id.*

> This Court noted:

> Upon questioning by the district court, DeWitt's counsel specifically requested a continuance to provide DeWitt the opportunity to obtain alternate counsel. Because DeWitt made his motion on the morning of trial, the practical effect of such motion, if granted, whether titled a motion for substitute counsel or a motion for a continuance, would have been a continuance of trial so DeWitt could obtain alternate counsel. Thus, we agree with the state's characterization of DeWitt's request as a motion for a continuance to obtain alternate counsel.

*Id.* We went on to analyze the issue and ultimately concluded that:

> Even assuming that *Cuyler* [*v. Sullivan*, 446 U.S. 335 (1980)], [*United States v.* ]*Welty*, [674 F.2d 185 (3d Cir. 1982], and [*State v.*] *Lippert*[, 145 Idaho 586, 181 P.3d 512 (Ct. App. 2007)] require that, where a defendant informs the district court that he or she is dissatisfied with retained counsel's representation on the morning of trial, the district court must inquire and provide a full and fair opportunity for the defendant to show good cause to support a request for alternate counsel in order to justify a continuance, the record does not disclose that DeWitt was deprived of such an opportunity in this case.

*DeWitt*, 153 Idaho at 663, 289 P.3d at 65.

Preliminarily, we note that a "see" cite is used "when the proposition is not directly stated by the cited authority but obviously follows from it; there is an inferential step between the authority cited and the proposition it supports." THE BLUEBOOK: A UNIFORM SYSTEM OF CITATION R. 1.2(a), at 62 (Columbia L. Rev. Ass'n et al. eds., 21st ed. 2020). However, Gray's proposition--that when a defendant requests new counsel on the morning of trial, that is, in effect, a request to continue the trial--does not obviously follow from the holding in *DeWitt*.

First, counsel's summary of *DeWitt* omits an important fact--that DeWitt's counsel explicitly requested a continuance while Gray did not. Second, it omits several analytical steps in the opinion, which are outlined above. *DeWitt* addresses the standard by which a trial court should assess a request for new counsel. That standard requires that a defendant must inform the trial court that he is dissatisfied with trial counsel's representation. Once that occurs, the trial court must inquire and provide a full and fair opportunity for the defendant to show good cause to support a request for alternate counsel in order to justify a continuance. Because the issue in *DeWitt* was whether the trial court properly analyzed DeWitt's request for new counsel, *DeWitt* does not state or infer that when a defendant requests new counsel on the morning of trial, that is,

4

in effect, a request to continue the trial. While a motion to substitute counsel made on the morning of trial may result in a continuance if granted, the motion for new trial does not necessarily require the trial court to address the facts underlying a motion for continuance.

As discussed below, Gray expressed dissatisfaction with the district court's evidentiary rulings, which Gray appeared to blame on counsel. But even if we could imply Gray's dissatisfaction from the fact that he requested new counsel, in his opening brief on appeal he makes no arguments regarding good cause to support his request. As a result, Gray waives any argument that the district court erred in denying his motion to substitute counsel.[1]

Gray cites *State v. Rockstahl*, 159 Idaho 364, 369, 360 P.3d 373, 378 (Ct. App. 2015) for the proposition that failing to analyze the factors related to the grant or denial of a motion to continue is an abuse of discretion which should result in a remand in this case. Gray asserts this lack of weighing of facts was the "very reason" this Court affirmed the district court's reversal of the magistrate court's denial of Rockstahl's motion for new counsel and motion for a continuance because, "without analyzing the *Carman*[2] factors or addressing his court calendar, the magistrate denied the motion to withdraw (and the inherent motion to continue and substitute the other attorney)."

Gray's argument omits a relevant fact: In *Rockstahl*, there was both a request for substitution of counsel and a discussion about a continuance. On the record, the parties discussed that Rockstahl would waive his speedy trial rights if the magistrate court would grant a continuance for approximately two months. *Rockstahl*, 159 Idaho at 367, 360 P.3d at 376. The State objected to any continuance, which the magistrate court ultimately agreed with. *Id.* Rockstahl appealed to the district court and argued on appeal that his right to counsel of choice was denied. *Id.* The district court ultimately determined that denial of the motion to withdraw, the denial of a continuance, *and* the magistrate's order that trial counsel and Rockstahl work together denied Rockstahl his right to counsel of choice. *Id.* at 368, 360 P.3d at 377. The State appealed.

On appeal to this Court, the State focused specifically on the denial of the continuance by the magistrate court, arguing that the district court did not apply the correct standard. *Id.* In the

---

[1]     As Gray had no basis for new counsel on the morning of trial, it seems apparent that appellate counsel, aware of such, simply converts the issue to a continuance request. Gray's continuance argument is not an extension of the issue raised below, but is, instead, a new claim.

[2]     *State v. Carman*, 114 Idaho 791, 760 P.2d 1107 (Ct. App. 1988), *aff'd*, 116 Idaho 190, 774 P.2d 900 (1989).

analysis, we noted that, "when a trial court considers a request that new counsel substitute in for withdrawing counsel *and* a request that a continuance be allowed, the trial court should examine the requests with the rights and interests of the defendant in mind, tempered by exigencies of judicial economy." *Id*. at 368, 360 P.3d at 377 (emphasis added) (internal quotation marks and citation omitted). The Court went on to note:

> This Court and the Idaho Supreme Court have thus recognized that "when a defendant requests new counsel, several factors have been identified for use in making the determination of whether his request for a continuance should be granted." *State v. Pratt*, 125 Idaho 546, 555, 873 P.2d 800, 809 (1993); *Carman*, 114 Idaho at 793, 760 P.2d at 1209.

*Rockstahl*, 159 Idaho at 369, 360 P.3d at 378. The Court further identified the relevant standard of review related to both the motion to continue and the request for new counsel: "But the larger issue of whether a defendant's right to counsel of choice was denied (which encompasses the motion for a continuance in this case) is a constitutional issue; thus, we exercise free review over that issue." *Id*. at 369, 360 P.3d at 378. In both *Carman* and *Pratt*, there was an explicit request for a continuance.

The section Gray quotes appears in the next paragraph of *Rockstahl* and reads: "without analyzing the *Carman* factors or addressing his court calendar, the magistrate denied the motion to withdraw (and the inherent motion to continue and substitute the other attorney)." However, there was nothing inherent about Rockstahl's motion to continue; it was a separate request. Because the two motions were necessarily related, this Court noted that the request for new counsel included (or encompassed) the continuance. *See Rockstahl*, 159 Idaho at 369, 360 P.3d at 378.

In his reply brief, Gray argues he "is specifically challenging the district court's decision to deny his separate request for a continuance so he could obtain new counsel." Notably, there is no record citation for this statement. This Court's review of the transcript finds no such separate request or even the word "continuance."

Gray continues in his reply brief:

Whether or not new counsel might subsequently attempt to file a motion to suppress and provide evidence to establish good cause or excusable neglect to justify doing so does not change the evaluation of Mr. Gray's claim that his current attorney's failure to file a timely motion to suppress had irreparably damaged his relationship with that attorney, and so, should be allowed a continuance to get a new attorney.

6

Nowhere in the record does Gray say his attorney's failure to file a motion to suppress irreparably damaged his relationship with his attorney or that because of that irreparably damaged relationship, the district court should grant a motion to continue so that Gray could obtain new counsel.

Apparently recognizing the above claim is unsupported in the record and that the State pointed out in the respondent's brief that Gray never claimed he had an irreconcilable difference with his attorney, Gray attempts to ameliorate his stance with a footnote:

> The State notes that Mr. Gray did not specifically assert that he had an "irreconcilable" conflict with his current attorney. (Resp. Br., p. 11.) However, there is no requirement that he use certain magic words in making that claim. *Cf. Jasso v. Camas County*, 151 Idaho 790, 796, 264 P.3d 897, 903 (2011) (reaffirming that reliance on magic words is not required; rather, all that is required for adequate judicial review is that the record reflect the basis of the position taken below, in that case of the factual basis for the decision-making body's conclusions). That such a conflict arose is clear from the context of Mr. Gray's statements to the court. Moreover, as discussed *infra*, it is perfectly permissible for him to groom his argument in that regard on appeal.

Gray's position is unsupported in the record. Nothing in the record supports the statement that Gray had an irreconcilable conflict with his attorney. What the record shows is that Gray had a disagreement with the district court's evidentiary rulings:

| | |
|---|---|
| GRAY: | I would like to seek new counsel. |
| COURT: | Okay. What's the basis? |
| GRAY: | The basis is the fact that everything that just went on here wasn't by any way--it's like taking away my rights to appease yours. |
| COURT: | Not appeasing my rights. |
| GRAY: | Well, theirs. I mean you guys got me--can I speak frankly? |
| COURT: | Yeah. |
| GRAY: | I mean they come into my house, and they--and I start off with what, ten charges? And they're saying that there's somebody that said I sold them drugs and they have proof of this, and I know I didn't. They know I didn't. I've got Detective Hay committing perjury on the stand in the preliminary hearing. And all this, you're saying that we can't bring up nothing to try and prove my innocence that they should have never been in my house. |
| COURT: | It should have been done under the rules. |
| GRAY: | So I would like new counsel. |
| COURT: | Well, it's a little late for that because we're ready to go for trial today. |
| GRAY: | So I have no rights in this matter? |
| COURT: | You do have rights. I can't appoint another attorney today. They have to be ready to go. |
| GRAY: | I'll get my own. |
| COURT: | They got to be ready to go in 15 minutes. |

7

GRAY:       Your Honor, I really think this is totally unfair on the fact that you can--basically what you're saying is they can just walk up into anybody's house and get a possession charge?

. . . .

GRAY:       With the way this is sitting. There's no way I can win this at all. I mean what's the point of having a jury trial if this is the case? Because I can't prove that I didn't have possession. Intent to sell, that's garbage. I mean, I guess we could prove that, but what's the point of the trial if it's already set to where I can't win or even have a chance at winning?

COURT:      Well, that's what you need to discuss with [defense counsel].

GRAY:       And that is why I would like to seek new counsel.

Contrary to Gray's statement that it is "clear" that Gray had an irreconcilable difference with his attorney, the record does not disclose any difference, let alone an irreconcilable one. Instead, it shows Gray aligned himself with his attorney ("And all this, you're saying that *we* can't bring up nothing to try and prove my innocence . . . .") (emphasis added), had a disagreement with the district court's evidentiary rulings, and was frustrated that his house had been searched pursuant to a warrant.

Moreover, Gray does not explain why his statement regarding the irreconcilable conflict is relevant to a request for a continuance. That fact would be relevant to a claim that the district court abused its discretion in denying Gray's request to substitute counsel, but that is not the argument Gray is raising on appeal.

Finally, we address Gray's assertion that it is "perfectly permissible for [Gray] to groom his argument in that regard on appeal." First, we find the grooming analogy to be overused and frankly, a bit tired, but more importantly, it is completely inapplicable to this case. The motion Gray made at trial was for new counsel, not a continuance. For the first time on appeal, Gray is raising a claim that he requested, and was denied, a continuance. In his reply brief, for the first time, he claims he had an irreconcilable difference with his attorney and that he requested a continuance. Neither assertion is supported by the record. No amount of grooming or misrepresentation can create arguments in the trial court where none existed.

That the granting of Gray's request for new counsel may have resulted in a continuance does not transform Gray's request to change counsel into a motion for a continuance. Because Gray did not move for a continuance, make any argument regarding a continuance, or receive an adverse ruling on the non-existent motion, he has not preserved any argument on that issue for appeal. *State v. Miramontes*, 170 Idaho 920, 924-25, 517 P.3d 849, 853-54 (2022). Consequently,

8

Gray has waived any argument on this issue. Additionally, Gray does not provide any argument or authority regarding the motion actually made at trial--the motion for new counsel. A party waives an issue on appeal if either authority or argument is lacking. *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996).

But beyond that, Gray's claim fails on the merits because a request for new counsel does not necessarily include a request for a continuance; a distinction that is recognized by the different factors and analysis relevant to each of the motions. For example, the request for new counsel requires a showing of good cause. Upon finding good cause, a trial court may, in its discretion, appoint a substitute attorney. *State v. Clayton*, 100 Idaho 896, 897, 606 P.2d 1000, 1001 (1980). In determining whether there is good cause for the request, the trial court must conduct a meaningful inquiry to determine whether a defendant possesses good cause for his or her request to substitute counsel. *Lippert*, 145 Idaho at 596, 181 P.3d at 522. As noted by this Court:

> Good cause includes an actual conflict of interest; a complete, irrevocable breakdown of communication; or an irreconcilable conflict which leads to an apparently unjust verdict. [*Lippert*, 145 Idaho at 596, 181 P.3d at 522]. Factors to be used in examining constitutional implications of a total breakdown in communication include: (1) whether the defendant's motion for new counsel was timely; (2) whether the trial court adequately inquired into defendant's reasons for making the motion; (3) whether the defendant-attorney conflict was so great that it led to a total lack of communication precluding an adequate defense; and (4) whether the defendant substantially and unreasonably contributed to the communication breakdown. *United States v. Lott*, 310 F.3d 1231, 1250 (10th Cir. 2002); *Lippert*, 145 Idaho at 597, 181 P.3d at 523.

*Lippert*, 152 Idaho at 887, 276 P.3d at 759. In contrast, different factors apply when a defendant requests a continuance in order to obtain new counsel, such as

> the timing of the motion; the requested length of delay, including whether the delay is an attempt to manipulate the proceedings; the number, if any, of similar continuances sought by the defendant; inconvenience to witnesses; any prejudice to the prosecution; whether an irreconcilable conflict exists between the accused and counsel; and the qualifications possessed by present counsel.

*State v. Carman*, 114 Idaho 791, 793, 760 P.2d 1207, 1209 (Ct. App. 1988), *aff'd*, 116 Idaho 190, 774 P.2d 900 (1989).

In the opening brief, Gray conflates the standards for analyzing a motion for continuance and a motion to appoint new counsel when arguing the district court "did not, for example, inquire into whether a delay would prejudice the prosecution, or whether an irreconcilable difference had arisen between Mr. Gray and his attorney." Whether there is delay relates to the grant or denial of

9

a continuance; whether there are irreconcilable differences relates to the grant or denial of a request to substitute counsel.

And, even if we were to consider the motion for new counsel made just before trial, Gray fails to provide the standard most applicable to the facts of this case. As this Court stated in *DeWitt*:

> If a defendant seeks to obtain new private counsel just before trial, the district court must decide if the reasons for the defendant's request, effectively a request for substitute counsel, constitute good cause and are sufficiently substantial to justify a continuance of the trial in order to allow new counsel to be obtained. *See United States v. Welty*, 674 F.2d 185, 190 (3d Cir. 1982).

*DeWitt*, 153 Idaho at 662, 289 P.3d at 64.

First, Gray has cited no authority or made any argument that this Court should ignore the above standard and, instead, focuses solely on the analysis of the (according to Gray) "inherent" motion to continue. We decline the invitation to ignore the motion made in the trial court and consider a motion not made or referenced in the trial court. Second, Gray makes no argument supported by authority that Gray demonstrated good cause for his request for new counsel and that the cause was sufficiently substantial to justify a continuance. Similarly, Gray makes no claim that the district court did not conduct a meaningful inquiry to determine whether Gray demonstrated good cause for his request. As discussed above, Gray did not state there were irreconcilable differences. What Gray was unhappy about was the district court's evidentiary rulings which, as noted by the district court, would not change even if Gray obtained new counsel. Absent any showing of good cause, the district court did not err in denying Gray's request for new counsel.

## IV.

## CONCLUSION

Gray did not make a motion for continuance in the district court and did not make any argument related to a motion to continue in the district court. As a result, Gray has not preserved a claim that the district court erred in failing to adequately consider his request for a continuance. Gray has similarly waived any claim that the district court erred in denying his request to substitute counsel because he failed to make any argument or provide authority for any such argument. The district court did not err in denying Gray's motion to substitute counsel. The judgment of conviction and the order denying Gray's motion to substitute counsel are affirmed.

Chief Judge GRATTON and Judge LORELLO, **CONCUR**.

10